# FRANKLIN W. MERRITT v. JAMES T. JOYCE and Others.[1]

April 19, 1912.

Nos. 17,334—(24).

**Option to buy — extension — waiver.**

> The mere fact that the owner of land here, who has within this state given an option to sell, conveys the same during the life of the option to a resident of an adjoining state, whose residence and place of business therein is readily ascertained and easily accessible, does not extend the time within which the option must be exercised, nor waive the tender of the purchase price within the stated time.

**Joint owners of option — trust.**

> If two or more are joint owners of an option to purchase land, and jointly interested in the venture of exploring it for mineral deposits and exercising the option to purchase the land if such deposits are found, each of such joint owners sustains a confidential and fiduciary relation to the others

[1] Reported in 135 N. W. 820.

so jointly interested in the common venture, so that, if one of them obtains the title to the land within the time of the option, upon payment of a less sum than stated in the option, and with intention to defraud the others of their rights, and such others refrain from protecting the option by tender on his false assurance that the title was taken and is held in trust for them, equity will impress a trust in their favor upon the land.

**Evidence.**

The evidence examined, and *held* to be such that it was error to dismiss the action without making findings of fact and conclusions of law.

Action in the district court for Crow Wing county against James T. Joyce, John McAlpine and John C. Campbell to determine what consideration was paid for the real estate mentioned in the opinion by defendant Joyce; what, if any, right he or the other defendants had therein and to determine that plaintiff was the owner of an undivided one-third of the premises, that defendant Joyce held title to an undivided one-third interest in trust for plaintiff, and plaintiff was owner thereof free and clear of any right, title or interest of either of the defendants. The amended complaint alleged the facts set out in the first two paragraphs of the opinion.

The separate answer of defendant Joyce admitted the making of the agreement between Andrew Aune and plaintiff and of that between plaintiff and defendant Campbell, by which Campbell agreed to purchase an undivided one-third interest in that contract, and of that between plaintiff and defendant McAlpine by which the latter agreed to purchase an undivided one-third interest in the Aune contract; admitted the conveyance of the property by Aune to the answering defendant, and that the latter claimed to be the owner of the land. It further alleged that plaintiff abandoned all of the privileges referred to in the agreement with Aune long prior to October 7, 1907, and never attempted to avail himself thereof.

The defendants McAlpine and Campbell demurred to the amended complaint.

The case was tried before McClenahan, J., who, at the close of the plaintiff's case, granted the motion of each of the defendants for a dismissal of the action. From an order denying plaintiff's motion

for a new trial as to each defendant separately, and as to all defendants jointly, he appealed. Reversed.

*Kerr & Fowler,* for appellant.

*Harris Richardson* and *Harold C. Kerr,* for respondents.

HOLT, J.

On December 6, 1905, Andrew Aune, the owner of an eighty-acre tract in Crow Wing county, Minnesota, upon receiving $500, gave plaintiff a contract under which explorations for iron ore might be made on the land for a period of twenty-two months following, and within that time he had the privilege of purchasing the same upon payment of an additional sum of $7,500. Within fifteen days after demand Aune was to furnish an abstract of title to the land, and plaintiff was to have fifteen days, after receipt thereof, within which to examine the same and pay the purchase money. This contract was duly recorded December 7, 1905. On March 14, 1906, plaintiff assigned to each of the defendants Campbell and McAlpine an undivided one-third interest in the Aune contract, and they each assumed and agreed to pay one-third of the purchase price if the land was bought, and bound themselves in equal proportion with plaintiff to perform the obligations of the Aune contract. These assignments were recorded June 23, 1906.

On October 27, 1906, one J. O. Stetson obtained for $5 an option to purchase the land from Aune for $30 per acre. He subjoined an assignment to the defendant Joyce, which he acknowledged and recorded November 1, 1906, and on the same date a quitclaim deed was obtained from Aune to Joyce for the stated consideration of $2,400, but the actual consideration, $2,200, was paid by the defendant Campbell. This deed was recorded November 2, 1906. On November 15, 1906, Joyce quitclaimed an undivided one-fourth to Campbell and a like amount to one John A. Root; but these quitclaim deeds were not of record when this action was begun. The deeds, however, were delivered to McAlpine about December 20, 1906, when Joyce also turned over to McAlpine two drafts, for $750 each, to pay for the one-half interest in the land retained by Joyce.

These drafts were payable to McAlpine's order, and were paid December 31, 1906. Aune left for Canada soon after making the deed, and has never returned to the state. Root has always resided in Pennsylvania, and Joyce in Eau Claire, Wisconsin.

Plaintiff brought this action on the theory that he and Campbell and McAlpine were mutually interested in the joint venture of exploring for iron ore and securing title to lands in which ore might be found; that the defendants Campbell and McAlpine conspired with the defendant Joyce to deprive plaintiff of his interest in the Aune land, and that the Stetson option and its assignment to Joyce, as well as the conveyance to him, were all done in pursuance of such plan; that plaintiff suffered his option to expire on the false assurance of McAlpine and Campbell that Joyce held the title in trust and the interest of plaintiff was protected; and plaintiff claims that he is entitled to have the court decree that Joyce holds one-third of the land in trust to be conveyed to plaintiff upon payment of such sum as the court may determine to be proper.

The defendant McAlpine disclaims any interest in the property, Campbell claims to own an undivided one-fourth, and Joyce an undivided one-half. None admit that plaintiff is entitled to any interest in the land or any relief.

At the close of plaintiff's testimony, upon separate motions made, each of the defendants was dismissed, and no findings made. A motion for a new trial being denied, plaintiff appeals.

Plaintiff contends that as a matter of law the Aune option had not expired when this action was brought, and no tender was required before bringing suit, for the reason that at no time since Aune left was there anyone in the state from whom to demand abstract of title or to whom payment could be tendered. If this be true, plaintiff is entitled to specific performance, regardless of the existence of the conspiracy, fraud, or fiduciary relation upon which relief is predicated in the complaint. It has been held that where an executory contract for the sale of lands has been entered into in the state where the land is, and subsequent thereto the vendor leaves the state, the vendee is not bound to seek out the vendor in another

country or distant state to make tender of the purchase price when due, in order to maintain an action for specific performance. Gill v. Bradley, 21 Minn. 15, and cases there cited. Nor can a debtor in a contract to pay money, entered into in one state, be placed in default by failure to make tender of payment, if at the time payment is to be made the creditor resides in another state, although the general rule is that it is the duty of the debtor to seek out and tender payment to the creditor. Hale v. Patton, 60 N. Y. 233, 19 Am. Rep. 168.

But plaintiff's contract with Aune is neither an agreement for the sale of lands nor an obligation to pay money. It is an option, giving no interest or estate in the land until plaintiff or his assigns choose to avail themselves of the right given by demanding the abstract and tendering the price. Equity is powerless to convert the option into a contract to convey, unless by the act of the option holder an interest in the land is created. Ordinarily time is of the essence of an option. Still it may well be conceded that the time of tender is waived or prolonged, where the giver of the option, to avoid its being consummated in a sale, secretes himself, or goes to distant states or countries, so that it becomes impossible or impracticable for the holder, by tender of performance, to vitalize the option into a contract which equity will enforce. But that is not this case.

The option, by its terms, binds the assigns of the parties; hence a sale by either party may be said to have been within their contemplation. Plaintiff knew of the conveyance to Joyce many months before the option expired, and also that McAlpine and Campbell, in all probability, knew and could inform him of Joyce's whereabouts; but he made no inquiry. During all the time Joyce was a resident of Eau Claire, Wisconsin, there engaged in business. Eau Claire is almost as accessible to Minneapolis, where plaintiff appears to have been a good part of the time, as is the land where Aune lived before deeding it. There is no evidence of any effort on the part of plaintiff to find the record owner of the land within the time of the option, or of any attempt on the part of Joyce to conceal him-

self. The omission in the deed from Aune to state the place of residence of the grantee is of too slight import to indicate an attempt to avoid tender being made. And we hold that the mere fact that the owner of the land, who has executed in this state to another an option, giving the right to purchase, within a time stated, before the expiration of that time, conveys to a nonresident, whose place of business and abode is readily ascertained and easily accessible, is no valid excuse for the failure to make the election to exercise the right conferred within the time stated by tender of the price. Therefore, on the first option contract, standing alone, plaintiff is entitled to no relief.

This conclusion does not, however, dispose of this appeal. When plaintiff assigned to McAlpine and Campbell each an undivided one-third interest in his option, they each became equally interested in the joint venture of seeking for mineral deposits on the land, and, if found in sufficient quantity and value, to secure the same by acquiring title to the land. From this situation confidential and fiduciary relations arose between the parties, so that each was bound to act in reference to the rights of the others in the common venture with the utmost good faith. Had plaintiff, within the time stated in the option, paid $2,200 for the land, taken the deed to himself, or caused it to be made to another, and, when McAlpine and Campbell ascertained that fact, they refrained from making a tender under the option, upon his representations that the title was taken and held in trust for their benefit, it seems clear that equity would afford a remedy, and decree that the purchase of the fee inured to the benefit of all three. This common venture was to seek mineral deposits, and, if they concluded that such existed of sufficient value, to secure the land. They were all equally interested in accomplishing the desired result at the lowest cost. If plaintiff could not by deception mislead McAlpine and Campbell to their injury in the option, neither will the law permit them to practice deceit to the destruction of plaintiff's right therein. Hodge v. Twitchell, 33 Minn. 389, 23 N. W. 547. And in Henderson v. Murray, 108 Minn. 76, 121 N. W. 214, 133 Am. St. 412, the court says:

"Where, however, a party obtains the legal title to land by fraud or bad faith, or by taking advantage of confidential or fiduciary relations, or in any other unconscientious manner, so that he cannot justly retain the property, equity will impress a constructive trust upon it in favor of the party who is equitably entitled to it."

In addition to the facts hereinbefore set out, there was testimony tending to show that McAlpine, Campbell, and plaintiff, before and during the time in question, were jointly interested in obtaining options upon lands in the so-called iron ore ranges of Minnesota. containing anticipated mineral deposits, exploring the same, securing title if they found evidence of ore of satisfactory quantity and value, and the leasing thereof to mining companies; that during part of the time Stetson was employed as a cruiser or explorer by McAlpine; that McAlpine was a close friend and business associate of the defendant Joyce; that Stetson had personally met Joyce but once before he obtained the option from Aune; that J. A. Root was known to none but McAlpine; that before Stetson got the Aune option he consulted with Campbell, and probably with McAlpine. When Stetson bargained for the land he had $200 cash in his pocket, not his own, and he could not tell whose it was. This he held onto as his compensation, jewing Aune down that amount, and obtaining from Campbell the whole amount that Aune received. Although Joyce claims to be the purchaser through Stetson, he, without question, pays $1,500 for one-half interest on a $2,200 deal. McAlpine claims he had known J. A. Root for some six years; that he had spoken to the latter about mineral lands in Minnesota, but not about this land, or the price at which it could be bought; that in December, 1906, or January, 1907, Root, at Erie, Pennsylvania, turned over $750 in currency to buy land with; but McAlpine is unable to tell to whom this money was paid, or anything more about the deal.

Aune was paid by Campbell's draft or check on November 1, 1906, but not until December 20, 1906, did Joyce pay the $1,500, and then to McAlpine by drafts payable to McAlpine's order. McAlpine does not know who received this money from these drafts which were paid December 31, 1906. Campbell surmises that he

117 M.—16.

got back three-fourths of the $2,200 he paid. McAlpine seems to have paid one-half the taxes for at least one year after the conveyance.

There is also testimony that, when plaintiff was informed of the fact of the deed from Aune to Joyce, shortly after its record, he inquired of McAlpine and Campbell what it meant, and they assured him that his interest was protected, and he would receive a deed to the same. This also appears from the testimony of their attorney. In cases where deceit and underhanded doings are the charge, if it be true, it is generally found difficult of proof, especially by direct evidence. Hence inferences of great weight may be drawn from the conduct of the adverse parties and the ease with which their memories fail them when called by the opposite side for cross-examination.

In a case where a plain issue of fact is presented to a court, trying the case without a jury, and where, upon the determination of such fact against a plaintiff, the legal conclusion is unquestionable that no recovery is permissible, it may be true that it should be assumed that, when the court dismisses the action on defendant's motion at the close of plaintiff's case, the court, in effect, by granting the motion, determines the fact at issue against plaintiff. But in the case at bar the determination of the ultimate facts necessarily depends on a number of independent facts and inferences to be drawn therefrom, and also upon legal principles the applicability of which to the facts found may be open to dispute. The court may have been of the opinion that the facts were substantially proven as plaintiff contends, except as to one matter, and this was mistakenly considered vital to his case, when in truth it was not. If a mistake of this kind be made by the trial court in dismissing an action, when plaintiff rests, without findings, it will be impossible in many cases to reach the error on appeal, if it is to be held that the trial court determined on a motion to dismiss that the evidence presented by plaintiff was not true or sufficient to the extent that a recovery could be based thereon.

The true rule is stated in Herrick v. Barnes, 78 Minn. 475, 81

N. W. 526, thus: "A trial court, whether the trial be with or without a jury, cannot rightly dismiss an action without a verdict or findings of fact, on the ground that the plaintiff has failed to establish a cause of action, unless the evidence is such that it would not sustain a verdict or finding for the plaintiff. It is not sufficient that the evidence would sustain a verdict or finding for the defendant. It must be such as to require, as a matter of law, a verdict or finding against the plaintiff. Tharalson v. Wyman, 58 Minn. 233, 59 N. W. 1009. It therefore follows that the court erred in so dismissing this action, unless the evidence, as a matter of law, required such a finding."

We have given the evidence in this case attentive consideration, and conclude that under the rule above announced it was error to dismiss the action when plaintiff rested. In view of a new trial, it is not proper for us to pass our judgment upon the weight of the evidence introduced, or attempt to draw inferences therefrom, further than has been done by the résumé set out above.

Order reversed.