OSCAR H. HOVDA v. E. O. BLEKRE AND OTHERS.
G. T. TORGRIMSON, APPELLANT.[1]

January 11, 1935.

No. 29,946.

*Fraser & Fraser,* for appellant.
*Sasse, French & Dunnette,* for respondent.

HOLT, JUSTICE.

The defendant G. T. Torgrimson appeals from the judgment entered upon the verdict in favor of plaintiff and against defendants Blekre and Torgrimson. Blekre did not defend. Torgrimson moved for judgment notwithstanding the verdict or a new trial prior to judgment.

The action was in replevin for the possession of a certificate of 12 shares of the capital stock of the defendant the Twin City

[1]Reported in 258 N. W. 305.

Building Association, owned by plaintiff, the possession of which had been obtained by the alleged fraud of defendants. The par value of the stock was $1,200. The errors assigned on the appeal go to the proposition (a) that there, is no evidence to sustain the verdict, hence defendant Torgrimson was entitled to a directed verdict and to judgment *non obstante;* and (b) that the misconduct of counsel and the jury acting under the influence of passion and prejudice entitle him to a new trial.

We think the following is a sufficient statement of what took place relative to the subject matter from the viewpoint of sustaining the judgment. Plaintiff after verdict is entitled to have the court presume that the jury accepted as true the evidence most favorable to him. On September 8, 1932, Blekre and one Trucsall went to Grand Meadow in Mower county, where they met defendant Torgrimson. The latter and Blekre were distantly related and had been personally acquainted for many years. Torgrimson was 57 years old, had been a banker, and for years had operated a general store at Grand Meadow. Blekre at the time was a stock and bond salesman. Plaintiff was over 60 years of age, a bachelor, and had owned and farmed 240 acres of land for 40 years about two miles from Grand Meadow. He had had dealings with Torgrimson, trusted him, and was related to him by a sister's marriage to Torgrimson's brother. Blekre and plaintiff had never met before, though they knew of each other and were distantly related, plaintiff's brother having married a cousin of Blekre's. Blekre at the time lived in Minneapolis. When in Grand Meadow he would visit Torgrimson and be invited to stay for a meal. He and Trucsall were asked to stay for lunch and did so. Blekre expressed a desire to meet plaintiff, and Torgrimson offered to take them there in his car. They found plaintiff at home. There was some talk of selling him some Wabasha bridge bonds, during which it developed that plaintiff had this stock of the Twin City Building & Loan Association and thought it was a good plan to convert all stocks and bonds into cash. Blekre said he had an office near the association and could cash the stock certificate for plaintiff and bring back the money the next day. The result was that Blekre

obtained the certificate, plaintiff signed his name on the back thereof, Blekre gave a receipt for it, and Torgrimson signed his name on the receipt as a witness. Blekre found upon presentation of the certificate to the association that only $150 could be had and the balance would be paid in instalments. So he drew the $150, surrendered the certificate, and obtained in place thereof a certificate to his wife for $1,050. This certificate he sold to defendant Cote. In the deal Trucsall obtained a commission which was credited upon his room rent, long past due. Blekre did not return to Grand Meadow as he agreed, but telephoned Torgrimson his inability to cash the certificate. The following day he did return and attempted to settle the matter by turning over some stock in a sheep ranch.

That Blekre swindled plaintiff out of this $1,200 certificate was conclusively proved. The question is whether there is sufficient evidence to warrant the finding of the jury that Torgrimson aided and abetted Blekre. Of course, merely taking Blekre over and introducing him to plaintiff and not warning plaintiff when he heard Blekre evolve the plan to get the certificate away from plaintiff is not enough to hold him liable. There must be something substantial in the evidence which leads to the inference that there was an active participation in the scheme to defraud plaintiff of the certificate. Torgrimson knew of Blekre's errand. He assisted plaintiff in finding the certificate. The jury could conclude that he heard all the talk between Blekre and plaintiff. He knew that plaintiff trusted him, Torgrimson. That plaintiff insisted that he sign the receipt Blekre gave for the certificate. Plaintiff had a smaller certificate in the vault at the bank at Elkton, a village five miles southwest from Hovda's farm, and Torgrimson took Blekre and Hovda there to get it while Trucsall remained at the farm. For some reason not fully disclosed Blekre did not obtain the smaller one. After they returned to the farm from Elkton, Hovda left Torgrimson's car and Trucsall entered it. Hovda appeared to have become uneasy about the certificate and followed in his own car to Grand Meadow and tried to have the certificate sent by registered mail. He says Torgrimson informed him no

registered mail went so as to get it to Minneapolis by the next day. Torgrimson testified that Blekre went to the post office and came back with this information. Blekre sent by letter his promissory note for $1,200 to Torgrimson and asked him to see if Hovda would accept the same secured with stock in a Black Hills sheep ranch. Torgrimson said he told Hovda not to have anything to do with the stock in the sheep ranch, and the note was returned. No suggestion came from Torgrimson to plaintiff to telephone the Twin City Building & Loan Association. He knew Hovda was becoming alarmed. He was an experienced business man. The testimony of Hovda reveals that he is rather deficient mentally; he said he "kicked himself" for not thinking fast. The jury in comparing the testimony of Torgrimson with that of Hovda could well mistrust the former. Torgrimson's account of what took place at the farm does not seem reasonable—his being so eager to visit with Trucsall in the auto that when he was called in to find the certificate he at once returned to the auto to talk to Trucsall and had to be called into the house again to witness the receipt. It is true that, if the jury had Hovda's testimony alone and could consider Hovda a normal person of average intelligence, it would be difficult to sustain a verdict against Torgrimson; but when the latter's testimony is considered, inferences are permissible not only of its partial untruthfulness, but also of his knowledge of Blekre's and Trucsall's mission and of his aiding and abetting them in its accomplishment. This language in Merritt v. Joyce, 117 Minn. 235, 242, 135 N. W. 820, 822, is pertinent:

"In cases where deceit and underhanded doings are the charge, if it be true, it is generally found difficult of proof, especially by direct evidence. Hence inferences of great weight may be drawn from the conduct of the adverse parties and the ease with which their memories fail them when called by the opposite side for cross-examination."

We cannot hold the verdict against Torgrimson without adequate support, approved as it is by the learned trial court, who had the advantage of observing the witnesses and their mode of testifying.

The present counsel for Torgrimson, who did not participate in the trial, attempts to present two assignments of error which upon the record are not available. The first is that the reply is a departure. No objection on that score was raised during the trial. It is now too late. Counsel for plaintiff is accused of misconduct. The settled case shows no misconduct of counsel to which objection was raised or exception preserved. There is no basis for claiming that the jury rendered the verdict under the influence of passion or prejudice.

The judgment is affirmed.