RODERICK D. HATHAWAY *vs.* WILLIAM BROWN & another.

October 5, 1875.

**Evidence—Jury, and not Witnesses, to draw Inferences from Facts.**—An inference of a witness, deduced from certain facts and circumstances, the force and effect of which it is the exclusive province of the jury to determine, is incompetent as evidence, and, if it relate to material matter, and is allowed, constitutes error.

**Fraudulent Sale Voidable only, and may be Affirmed.**—A sale fraudulent and void as against creditors is voidable, but not absolutely void. It may be affirmed or avoided by such creditors at their election, but they cannot do both.

Action for the wrongful taking and conversion of a stock of goods, sold by one Mills to the plaintiff, and taken from the latter's possession by the defendant, Brown, as sheriff, by virtue of executions against Mills in favor of the other defendants. Defence—that the sale to plaintiff was in fraud of the creditors of Mills. At the trial in the district court for Olmsted county, before *Van Dyke*, J., the plaintiff introduced evidence tending to prove that, in part payment for the goods in question, he had conveyed to Mills certain real estate, and that some of the defendants, with knowledge of this fact and of the circumstances attending the sale, had caused the land so conveyed to be levied on and sold under their executions against Mills. On this point the court instructed the jury as follows: "A fraudulent sale, that would be void as to creditors, is only void when they see fit to treat it as void; but if the creditors in such case agree to, and accept and adopt, such sale, and demand and receive the consideration, or a considerable part of it, which the debtor obtained for the property so sold, they thereby acquiesce in and affirm such sale, and are precluded from denying the validity thereof. They may either avoid it, or affirm it and take the benefits under it, but they cannot do both. If, then, you find from the evidence that these creditors, or any of them, with full knowledge of all the

facts and circumstances of the sale, and of the alleged fraudulent character thereof, claimed and received and accepted the property which Mills received from Hathaway, as the consideration, in whole or in part, for the sale of the goods in question, then, as to all the creditors who thus acted, you must hold the sale to be good, although but for such action you might otherwise find such sale to be bad."

To this the defendants excepted. Other exceptions taken are stated in the opinion. The jury found for the plaintiff, a new trial was refused, and defendants appealed.

*H. C. Butler* and *E. A. McMahon*, for appellants.

*C. H. Berry* and *Chas. M. Start*, for respondent.

CORNELL, J. It is claimed by defendants that the sale under which the plaintiff claims title to the goods in question was fraudulent and void, as having been made by Mills, who was at the time an insolvent, with the intent to hinder, delay and defraud his creditors, and that the vendee, Hathaway, at the time of his purchase, had knowledge of such insolvency, and notice of such fraudulent intent on the part of his vendor.

These were the real issues controverted on the trial, and which the jury had to determine. Evidence was introduced by the defence tending to establish their theory of the case, and, as a part thereof, one Billings and R. A. Jones testified to a certain conversation had between them and plaintiff, while seated together by a stove in the store of Mills, on a certain evening in the fall of 1868, of a confidential character, and in a low tone of voice, concerning the financial embarrassments of Mills, in which, as they state, the plaintiff informed Billings that "it was true that Mills was largely in debt and embarrassed, but that if his creditors would carry him over that fall until after harvest, and trade was good, he thought he (Mills) would come out all right." To rebut the effect of this evidence, by proving that no such conversation occurred at the time alleged by witnesses, Jones and Billings, as testified to by them, the plaintiff

called as a witness one Russell, who was present in the store at the time, and who, after testifying as to the situation of the parties, and what occurred, and that he was near the stove all the time, and did not hear any conversation of the kind indicated, was asked, " Could Jones, Billings and Hathaway have sat down by the stove, and had a conversation, without you having known it ?" The defendants objected to this question as incompetent; the court overruled the objection, and defendants excepted. The witness answered, " I think they could not."

This was clearly nothing but an inference of the witness, founded upon certain facts and circumstances, the force and effect of which it was the exclusive province of the jury to determine, and was, therefore, incompetent testimony. It related to a material matter, and as it is impossible to say that it did not have some influence upon the jury, prejudicial to defendants, a new trial must be granted.

In rebutting the case made out by the defence, tending to show that the plaintiff had notice, at the time of his purchase from Mills, that he was making the sale with intent to hinder, delay and defraud his creditors in the collection of their debts, the following question was put to the plaintiff while testifying in his own behalf, " Did you know Mills had any intention or purpose to defraud, hinder or delay his creditors in making this sale to you ?" To which witness answered, " I had no knowledge whatever that he had any such intentions." This question and answer were properly objected to by defendants, and the ruling of the court allowing them duly excepted to. The question was first propounded to the witness by plaintiff's counsel on their direct examination, but was withdrawn on an objection being interposed by defendants, whereupon the court renewed it. The form of the question was clearly objectionable, as indicating to the witness the very fact which plaintiff was seeking to prove, and it may, in my opinion, be seriously questioned whether, assuming that the witness

knew the very object and purpose of Mills in making the sale, the character of his answer might not depend upon his understanding of what, in law, constituted an intention to defraud, hinder and delay creditors, in which case its effect would be to place before the jury, as a fact, the conclusion of the witness, founded, in part at least, upon his own opinion in reference to a legal question. It would clearly have been much less liable to objection to have enquired of the witness whether he had any knowledge as to the intention of Mills in making the sale, and, if so, what that knowledge was ; but inasmuch as a new trial must be granted upon the first point herein discussed, no decision of this question is necessary or intended.

Conceding the fraudulent character of the sale as to the creditors of Mills, it was voidable, but not absolutely void. It was competent for them to elect either to avoid it or to affirm it by pursuing the property which their debtor acquired in exchange for that which he sold. They could not do both. *Lemay* v. *Bibeau*, 2 Minn. 291 ; *Scott* v. *Edes*, 3 Minn. 377. We discover no error in the ruling of the court below upon this question, nor in its charge to the jury, which very clearly and fairly presented the questions which they were called upon to determine, as well as the rules of law applicable to the case as disclosed by the evidence ; and in view of the fact that two trials have been had, with substantially a like result, it is with no little hesitation that we have felt compelled to set aside the verdict. But because of the erroneous ruling upon the admissibility of evidence, hereinbefore first considered, a new trial must be granted.

Ordered reversed.