JOHN M. NESTER v. P. H. GROSS and Others.[1]

December 7, 1896.

Nos. 10,232—(182).

**Constructive Trust—Fiduciary Relation.**

If one party obtains the legal title to land by fraud, or by violation of a fiduciary relation, or in any other unconscientious manner, so that he may not equitably retain it, equity will impress a constructive trust upon the property in favor of one who is in good conscience entitled to it.

**Same—Purchase in Agent's Name—Corporation.**

The principal defendant herein was one of the promoters and incorporators of a corporation, of which he became its first president. Before the actual organization of the corporation, it was agreed between him and his associate incorporators that he should purchase a site for the plant of the corporation, and the sum paid therefor was to be treated as a payment on his subscription to the capital stock. After the corporation was organized, he paid, pursuant to previous negotiations with the owner, the purchase price for the site, taking the deed in his own name. Concealing this last fact from the corporation, he entered upon the site as its general manager, and by its authority and with its money erected a plant thereon for manufacturing illuminating gas, the business of the corporation. *Held*, that he holds the legal title of the site in trust for the corporation or its assigns.

Appeal by plaintiff from a judgment of the district court for Morrison county, adjudging that the action be dismissed, entered in pursuance of the findings and order of Searle, J. Reversed.

*Lindbergh, Blanchard & Lindbergh*, for appellant.
*George W. Stewart*, for respondents.

START, C. J. The plaintiff brought this action to declare and enforce a trust as to lot 8 in block 53 of the original town site of the town (now city) of Little Falls, Minnesota. The material facts found by the trial court, briefly stated, are substantially these:

The People's Gas & Electric Company of Little Falls became a corporation on November 4, 1892 (as admitted by the pleadings), for the manufacturing and selling of illuminating gas and for other purposes. Its articles were filed November 3, and it was to commence

[1] Reported in 69 N. W. 39.

business November 8, 1892. The defendant P. H. Gross was one of the organizers and promoters of the corporation, and its president and general manager from its inception. On October 28, 1892, the proposed incorporators and stockholders of the corporation executed a writing whereby they mutually agreed to become members thereof, and to take and pay for the number of shares of the capital stock set opposite their respective names, to be paid as called for by the board of directors. The defendant Gross signed the agreement, and subscribed for 20 shares of the stock, of the par value of $100 each. At a meeting of the proposed incorporators, held before the articles of incorporation were signed, for the purpose of considering the organization of the corporation, and for other purposes, it was determined by those present, of whom Gross was one, that the corporation ought to own the site upon which its plant was to be located, and that he should make the purchase of a lot for that purpose, and that the amount paid by him therefor should be allowed as a payment on his stock subscription.

Thereafter, and before the organization of the company was completed, Gross entered into negotiations for the purchase of the lot in question, and paid the sum of $50 on the purchase price thereof. But the lot was not conveyed until after the corporation was organized, when, on November 14, 1892, he took the deed of the lot in his own name, paid the balance of the purchase price, $650, and recorded the deed. Shortly after the execution of this deed the corporation went into possession of the lot, caused to be erected on the lot its gas plant, at a cost of over $1,000, and established an entire system of gas works in the city, at a cost of $10,000, all of which was and is connected with and dependent upon the plant on the lot. This plant and system was so constructed on the lot, and connected therewith, by the corporation, under the supervision of Gross. Neither the corporation, nor any of its officers or members, except Gross, had any knowledge that the title to the lot had been taken in his name until a large part of the plant and system had been so constructed. The defendant Gross has paid on his stock subscription, exclusive of the $700 paid for the lot, the sum of $1,550 in cash. He also paid taxes on the lot,—$8.62 in the year 1892, and $9.34 in the year 1893.

The corporation became insolvent, and in July, 1893, it made an assignment for the benefit of its creditors, and the plaintiff has suc-

ceeded to all the title and equity of the corporation in and to the lot,. by purchase and deed from the assignee, dated July 24, 1894. The corporation, its assignee, and the plaintiff, successively, have been in the possession and control of the lot and all of its appurtenances ever since November 20, 1892, and all of the improvements thereon or connected therewith were made while the corporation was in possession thereof. On April 1, 1893, Gross and J. C. Flynn signed a note for the corporation, as accommodation makers, to secure a loan to it. An action on the note was commenced by the holder thereof against Gross and Flynn, and at the trial thereof (which was subsequent to the commencement of this action) a verdict was directed in favor of Flynn and against Gross for $687.

Other than as we have stated, the trial court did not find, as a fact, that the defendant had paid his stock subscription in full, exclusive of the $700 paid for the lot. It found, as a conclusion of law, that he had paid his stock subscription in full, and that, if the plaintiff paid into court, for the defendant Gross, within 60 days, the $700 so paid for the lot and the taxes, he and his wife should convey the lot to the plaintiff, but, if the plaintiff failed so to pay the money into court within the 60 days, this action should be dismissed. The plaintiff did not make the payment, and judgment was so entered, from which the plaintiff appealed.

The important question in this case is what was the character of the relation between Gross and the corporation, as to the site upon which its plant was erected,—that is, the lot in question? Clearly, the relation was a fiduciary one. He was its agent to select and purchase a site for its plant. No other rational conclusion can be drawn from the facts found by the trial court.

It is claimed, however, by defendant, that there was no fiduciary relation existing between Gross and the corporation, because the arrangement that he should purchase the site was made before the corporation was actually organized. It was competent for the corporation to adopt the preliminary arrangement made by the proposed incorporators for acquiring a site for the corporation, so as to enable it to enter promptly upon the business for which it was organized, and, when it did so, with the express or implied assent of Gross, he sustained the same relation to the corporation that he did to his as-

sociate promoters and incorporators.    He accepted the agency and trust imposed upon him by the arrangement with the promoters, and proceeded to execute it by entering into negotiations for securing the site, and on November 14, 1892, 10 days after the corporation was organized, and at a time when he was president thereof, he paid the balance of the $700, which he was authorized to treat as a payment on his stock subscription, for the lot.    But, in violation of his duty, he took the deed in his own name.    He concealed this last fact from the corporation.    There was no repudiation of his agency or trust. On the contrary, by his acts, he led the corporation to believe that he had acted as its agent in selecting and purchasing the site for it under the preliminary arrangement.    As its general manager he took possession of the lot for it, with its consent, as a site for its plant, and expended over a thousand dollars of its money for the building, plant, and appurtenances on the lot, under its authority, before the corporation, or any officer or stockholder except himself, had any notice that the legal title to the lot was not in the corporation.    The defendant is estopped from now claiming that he was not acting as the agent of the corporation, but was acting for himself, in the selecting and purchasing of this site for its plant, pursuant to the preliminary arrangement made before it was actually organized.

The plaintiff claims that the purchase price of the lot must, in equity, be regarded as having been paid by the corporation, and that hence, the deed having been taken in the name of the defendant, without its consent, a trust resulted in its favor, and that he holds the legal title for it.    This is controverted by the defendant.    It is unnecessary for us to discuss or decide this question.    Our statute abolishing uses and trusts does not extend to trusts arising by operation of law.    G. S. 1894, § 4279.

"Constructive trusts are raised by equity for the purpose of working out right and justice."    "All instances of constructive trust may be referred to what equity denominates 'fraud,' either actual or constructive, including acts or omissions in violation of fiduciary obligations.    If one party obtains the legal title to property, not only by fraud, or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity

as the beneficial owner." 1 Pom. Eq. Jur. § 155; Rollins v. Mitchell, 52 Minn. 41, 53 N. W. 1020.

Now, the defendant Gross, by his conduct in putting the corporation into possession of the lot as a site for its plant, while sustaining a fiduciary relation to it, and concealing from it the fact that he had taken the title to the lot in his own name, and by erecting thereon, ostensibly for it, the building and plant, represented to the corporation that he had carried out his arrangement to purchase a site for it as a payment pro tanto on his stock subscription, and that he was expending its money as its agent on its own lot, and not on his. And we hold, upon the plainest principles of justice, that he is bound by his representations, and that, in the character of a trustee ex maleficio, he holds the legal title to the lot for the corporation, or its grantee, the plaintiff, and must convey it to him on such terms as are equitable.

It appears that the defendant's stock subscription was originally $2,000. Out of this, the $700 was to be paid for the lot. But, exclusive of this sum, he has paid on his subscription $1,550, leaving only $450 to be applied on the purchase price of the lot, or a balance of $250 unpaid. This amount, with interest at the rate of 7 per cent. per annum from the date of the purchase, November 14, 1892, the defendant is equitably entitled to have paid to him, with the amount of the taxes and interest, before he is required to convey the legal title of the lot to the plaintiff; but, upon such payment within a reasonable time to be fixed by the trial court, he must so convey the lot. The defendant is not entitled to tack to the balance due on the purchase price of the lot the amount of the verdict against him on account of the note signed by him for the corporation, for it is a matter wholly disconnected with the purchase of the lot, and the defendant's conduct in the premises does not entitle him to any further equitable consideration.

The judgment appealed from must be reversed, and the case remanded, with directions to the district court to modify its conclusions of law in accordance with this opinion, and proceed in the cause accordingly. So ordered.