LUCAS KELLS v. CLARENDON P. McCLURE.[1]

June 21, 1897.

Nos. 10,614—(202).

### Fraudulent Conveyance—Evidence of Grantor's Insolvency.

In an action by an assignee in insolvency to set aside a transfer by his assignor on the ground that it was in fact made to hinder, delay, and defraud creditors, it is competent, for the purpose of showing the insolvency of the assignor, to put in evidence the books of account and records, duly verified, pertaining not only to the individual business of the assignor, but also that of a co-partnership of which he was a member.

### Same—Intent to Delay—Knowledge of Grantee.

Evidence considered, and *held*, that it supports the findings of the trial court to the effect that the plaintiff's assignor made a bill of sale of a quantity of logs to the defendant with the intent to delay and defraud his creditors, and that the defendant then had notice of such intent.

### Same—Ratification by Assignee.

*Held*, that the assignee did not ratify such transfer as to creditors by the mere fact that some of the notes given for the purchase price came into his hands as such assignee, and were retained by him until the trial of this action.

### Same—Compelling Restitution by Grantee.

*Held*, that the trial court did not err in refusing to modify its conclusions of law so as to permit the defendant to pay the value of the logs instead of surrendering the logs and lumber manufactured therefrom, nor in refusing to provide for an accounting as to the cost of manufacturing such lumber.

Appeal by defendant from an order of the district court for Stearns county, Baxter, J., denying his motion for a new trial. Affirmed.

*David T. Calhoun, Myron D. Taylor,* and *George W. Stewart,* for appellant.

*D. W. Bruckart, Miner & Barto,* and *Hale, Morgan & Montgomery,* for respondent.

START, C. J.

On April 24, 1895, N. P. Clarke executed a bill of sale to the de-

[1] Reported in 71 N. W. 827.

fendant McClure of 8,565,323 feet of pine logs then owned by him and of the value of six dollars per thousand feet. McClure paid no money for the logs, but gave his notes, 135 in all, to Clarke for the aggregate amount of $51,000, in sums from $50 to $1,000, covering a period before due from July 5, 1895, to October, 1897, and secured their payment by a chattel mortgage on the logs. At the time of the making of this bill of sale, N. P. Clarke was, and for some years prior thereto had been, engaged individually in the banking business and other enterprises. He was also during the same time, in connection with Frederick H. Clarke, under the firm name of N. P. Clarke & Co., engaged in the business of manufacturing and selling lumber. Ten days after the making of the bill of sale, and on May 4, 1895, N. P. Clarke and Frederick H. Clarke, individually and as such co-partners, made a general assignment under the insolvency laws of this state for the benefit of creditors to the plaintiff.

The assignee brought this action to set aside such transfer of the logs on the alleged ground that it was made for the purpose of delaying and defrauding creditors, and for the recovery of the logs and the lumber manufactured therefrom, in the hands of the defendant. The trial court found as a fact that the sale was made for the purpose of hindering, delaying, and defrauding creditors, and directed judgment for the plaintiff setting aside the transfer, and for the recovery of the logs and lumber. The defendant appealed from an order denying his motion for a new trial.

1. The defendant, by his assignments of error 1 to 11, inclusive, challenges the correctness of the rulings of the trial court in receiving against his objection and exceptions certain documentary evidence consisting of account books, records, and schedules, duly verified, relating to the business of N. P. Clarke and that of the firm. The evidence was material for the purpose of showing that N. P. Clarke was insolvent at the time he executed the bill of sale. But two specific objections to this evidence were urged by defendant on the argument:

(a) That so much of the evidence as related to the affairs of N. P. Clarke & Co. was immaterial, because it is not alleged in the complaint that the firm was insolvent. But it was alleged that N. P. Clarke was insolvent at the time he made the bill of sale, and it was

competent to prove his insolvency, whether alleged or not, as a fact in the chain of evidence tending to establish the alleged ultimate fact that the sale was fraudulent as to creditors; and in order to show his insolvency it was proper and necessary to show the financial condition of the firm.

(b) That "it was not claimed that N. P. Clarke had not paid or secured adequately his individual creditors in full; and, besides, the bank was but a small part of his business, and its assets but nominal when compared with his entire assets; and the bank's books, standing alone, were misleading, and had no tendency to sustain any of the issues in the case." But there is no pretense that his creditors were thus secured at the time the bill of sale was made.

If, as claimed, such creditors subsequently accepted McClure's notes in payment of their claims, such fact would not conclusively rebut the fraudulent character of the sale, if it was prima facie established to be such, for the creditors may have accepted the notes because, after the sale of the logs, it was the only practical thing they could do. It is true, the bank was only a part of Clarke's individual business, but it was an important part, and the evidence shows that its assets were slight compared with the amount due depositors, which was some $110,000, and that Clarke was anxious to secure an extension of the time of payment of these claims. The evidence objected to was competent, not only as tending to show insolvency, but also the probable motive of Clarke in making the bill of sale.

Assignment 12 relates to the admission in evidence, over defendant's objection, of a list of lands sold by Clarke to McClure the January previous to the making of the bill of sale. When this list was offered, it already appeared in the evidence that Clarke, on January 12, 1895, conveyed to the defendant $80,000 worth of land, who paid nothing for it except to give back his notes for the purchase price, secured by a mortgage on the land. The deed for this land was not recorded until after the bill of sale in question was made. The list here referred to was offered and received as a part of the cross-examination of the defendant, simply to identify the lands, as to which the defendant had already testified. It was properly received for this purpose, as the objection was that the list was not relevant or material.

Assignments of error 13 and 14 do not seem to be relied upon by the plaintiff, as they were not discussed by counsel, either in the brief or on the oral argument. In any event, the alleged error, if it were such, was harmless, as the trial court found in favor of the defendant as to the amount of logs which passed by the bill of sale. The purpose of the evidence which was received over the objection of the defendant, which ruling of the court is the basis of these assignments of error, was to furnish a basis for ascertaining the quantity of logs actually sold to defendant.

2. The defendant, by his assignments of error 15 to 19, inclusive, raises the question that the findings of fact by the trial court, to the effect that Clarke made the transfer of logs with intent to hinder, delay, and defraud his creditors, and that the defendant had notice of such intent, are not sustained by the evidence.

The evidence reasonably tends to support the findings of fact in this respect. The evidence warrants the conclusion that on and prior to the day of the making of the bill of sale for the logs Clarke was hopelessly insolvent. The defendant combats this conclusion, because the evidence shows that Clarke then had ample individual property to pay all of his individual liabilities. But conceding, as claimed, that the excess of his individual assets over his individual liabilities was $100,000, still the fact remains that he was liable for all of the debts of N. P. Clarke & Co., which exceeded the assets of the firm more than five to one, or, in round numbers, the firm owed $550,000, and had not more than $100,000 of assets. This was approximately the condition of the firm ten days after the making of the bill of sale, when the assignment was made. The evidence shows that there was no substantial change in the relative amount of debts and assets of the firm during this time. The evidence also justifies the conclusion that McClure, the vendee, was then insolvent; that he was, and had been for some years, indebted to Clarke in the sum of $5,000, and that he did not possess the business experience and ability which would induce a prudent business man to sell him $51,000 worth of logs, without the payment of a dollar in cash, on long time, without any security save a chattel mortgage on the logs delivered to him.

Here we have an insolvent debtor making this unusual and extraordinary sale to his own relative and insolvent debtor on the

eve of making an assignment. What was or could have been the motive for such a sale? Unexplained, the natural inference is that the purpose was to delay or defraud his creditors. The explanation offered is that the vendor desired to obtain paper with which to pay his individual debts. But, if Clarke was anxious to pay his individual debts, why take the course that was taken, instead of making an assignment at once for the benefit of his creditors? If he had done so, the law would have applied his individual assets to the payment of his individual debts. Again, if no assignment had been made, his creditors could have subjected the logs to the payment of their claims at once, but by exchanging them for long-time paper the necessary result was to delay the creditors in the collection of their demands. This was so, not only as to individual creditors, but to firm creditors as well, for the latter had the right to seize the logs to pay their debts, subject to the equity of the individual creditors in the premises. If the intent of Clarke in making the bill of sale was to thereby obtain an extension of time in which to pay his debts until the notes matured it was a fraudulent intent as to his creditors. Bennett v. Ellison, 23 Minn. 242. He could not thus deprive his creditors of the right to have his property converted into cash without delay.

It is maintained by counsel for defendant with candor and earnestness that, inasmuch as the logs were Clarke's individual property, and were first applicable to pay his individual debts, and that the evidence shows that the notes received for the logs were transferred to and accepted by such creditors in payment of their demands, there could be no intent on his part to defraud creditors; that the case stands as if he had received $51,000 in cash for the logs, and had paid the amount to his individual creditors. It is only necessary, in answer to this claim, to add to the suggestions already made the further one that there is no evidence tending to show that there was any agreement or understanding, before the sale, with his creditors, that they would accept the notes in payment of their demands, and because they afterwards accepted what he offered them by no means proves that they were not delayed and defrauded by the transaction. If Clarke had sold for cash, there would have been no delay.

The previous transfer in January, 1895, of $80,000 worth of land

by Clarke to McClure under similar circumstances as those attending the making of the bill of sale was a fact which it was competent for the trial court to consider in ascertaining what Clarke's real intent was in making the transfer in question.

There was evidence in the case other than that to which we have specially referred, tending to show facts and circumstances which, unexplained, indicate, in some degree at least, that Clarke must have intended by the bill of sale to delay and defraud creditors. If he did so intend, then the evidence is ample to sustain the conclusion of fact that the defendant had notice of such intent, for the evidence indicates that, whatever Clarke's purpose and intent in the premises were, they were likewise McClure's. He candidly admits that his understanding was that Clarke was going to use the paper to pay the people he individually owed, "for the sake of getting an extension of time." The evidence made a fair prima facie case in behalf of the plaintiff's claim that the transfer of the logs was fraudulent as to creditors, and whether the denials and explanations of Clarke and McClure were sufficient to overcome it was a question for the trial judge. His conclusion to the contrary cannot be disturbed.

3. It is an admitted fact in this case that the notes of the defendant, given on this transfer of the logs, to the amount of $9,750, were turned over to the plaintiff as assignee, and that he still holds them. The defendant claims that this was a ratification of the alleged fraudulent sale. It is competent for creditors to affirm a fraudulent transfer of his property by their debtor, and they will be held to have done so if they pursue the property which the debtor acquired in exchange for that sold. Hathaway v. Brown, 22 Minn. 214. There is no evidence that the plaintiff has asserted any claim to the notes which came to his hands as assignee. The simple fact that they came to his hands as assignee from his assignor would not be a ratification of the transfer as to creditors. It is not necessary here to decide whether the assignee, by his acts in this respect, could bind the creditors, for the burden of showing a ratification was upon the defendant, and there is nothing in the record to base the claim upon except the admission that the notes were turned over to him, and he still holds them. This is not sufficient to show a ratification. The trial court, by its order for judgment, directed

69 M.—5

the notes to be brought into court to be turned over to the defendant, or otherwise disposed of, as the court might direct.    This sufficiently protects the interest of the defendant in the notes.

4. The defendant moved the court to amend its conclusions of law in several particulars.    The motion was denied, and the ruling is assigned as error.    The trial court rightly denied the motion.

The first modification asked was to the effect that the defendant be permitted to pay the value of the logs instead of surrendering the logs and lumber manufactured therefrom to the plaintiff.

The second was that an accounting be had of the cost of manufacturing the lumber, and that he be allowed the cost thereof.    No such issues were tendered by the answer.    It would be inequitable to allow the defendant any sum for the manufacturing of the lumber, for it appears from the record that the manufacturer who sawed the logs took his pay in logs, and that in no other way has the defendant paid the expenses of manufacturing the lumber.    It must be conceded that it would not be equitable to charge him with the value of the logs so used.    The conclusions of law of the trial court are not entirely clear on this point, but, construing the third and fourth subdivisions thereof together, it must be held that the defendant is not charged thereby with the value of the logs which the mill proprietor retained as his compensation for the sawing.

The last modification of the conclusions of law requested by the defendant was that provision be made for ascertaining what notes secured by the defendant's chattel mortgage are outstanding in the hands of bona fide purchasers, and that the notes be paid from the proceeds of a sale of the logs.    The holders of such notes are not parties to this action, and any equities they have, if any, to be paid from such fund, cannot be affected by any judgment to be entered herein.    If the defendant deemed it necessary for his protection to have such note holders made parties to this action, he should have moved accordingly before the trial.

Order affirmed.