# JAMES G. SHEARER v. JOSEPH U. BARNES and Another.[1]

June 14, 1912.

Nos. 17,511—(117).

**Constructive trust.**

Where the president and manager of a trust company appropriated a portion of its funds, taking the same in the form of a loan, but without the knowledge or approval of the board of directors, and applied the same upon the purchase price of real property, taking the title in his own name and for his own personal use and benefit, a pro tanto constructive trust arose in favor of the trust company.

**Same — intent of officer immaterial.**

In view of R. L. 1905, § 3045, prohibiting trust companies from lending their funds to any director, officer, agent, or employee thereof, and providing that, if any such officer, director, agent or employee shall become indebted to the company by overdraft, promissory note, account, indorsement, guaranty, or any other contract, he shall be guilty of larceny of the amount of such indebtedness, the intent of the president and manager of a trust company in appropriating its funds to his private use by purchasing property in his own name therewith, and the form and mode of procedure by which such appropriation was made, are immaterial upon the issue as to whether such transaction gave rise to a constructive trust in the property in favor of the company.

**Same — partial repayment.**

The provisions of this statute likewise rendered immaterial upon such issue the fact that such officer, immediately after such appropriation, returned a portion of such funds to the corporation by means of a check upon his already overdrawn deposit account with the company; nor did the formal repayment of a portion of the funds diverted, by means of such overdraft, lessen the proportionate interest which the company acquired in the property by reason of the investment of its funds therein.

**Constructive trust.**

A constructive trust in land is an estate therein, having its inception contemporaneously with the acts upon which it is predicated.

**Election of remedy.**

The beneficiary of a constructive trust may elect either to follow the property with a mere charge or lien or may pursue the res as such.

[1] Reported in 136 N. W. 861.

**Waiver — burden of proof.**

Where, in an action to impress property with a constructive trust, the original existence of the trust is established, the burden of proving a waiver thereof by an election to follow the property with a mere lien, or by acceptance of a return of the misappropriated funds, is upon the defendant.

**Election by receiver — conduct — evidence.**

The evidence of an election against a constructive trust by the beneficiary's receiver must be clear and convincing; and where such election is predicated upon the acts and conduct of the receiver, it must appear that he acted with full knowledge of the facts, or the equivalent thereof, as distinguished from mere notice.

**Balance due to trustee.**

Proof of a balance due the trustee ex maleficio from the beneficiary upon general account does not of itself affect the existence of the trust.

**Evidence insufficient to show election.**

Evidence, in an action by a receiver of a trust company, to impress a constructive trust upon real property purchased by the president and manager of such company with its funds, the title thereto being taken in his own name, *held* insufficient in show an election by such receiver against the trust.

**Election.**

The institution of such action was itself an election to pursue the res as such.

**Revocation of election — evidence.**

Evidence *held* insufficient to show a withdrawal or revocation of the election evidenced by the institution of the action to recover the property.

**Officer of corporation.**

Corporate officers holding positions of trust should be held to strict accountability for any and all breaches of their trust and disobedience of the law, and the law must be so administered that they will never be allowed to profit by disobeying it.

**Exclusion of evidence.**

Where, in an action by a receiver of a trust company to impress a constructive trust upon property purchased by the president and manager of such company with its funds, the title thereto being taken in his own name, the defendant was allowed, in defense thereto, to show a deposit of certain securities by such corporate officer in the corporation's vaults, at or about the time of the misappropriation of its funds by him, the said securities being claimed to be the property of the said officer, and to have been so deposited as security for the funds so misappropriated, and the defendant

was also allowed to show the receipt of such securities by the receiver and the latter's subsequent conversion and distribution thereof as assets of the corporation, the receiver should have been allowed to prove that, in equity, such securities really belonged to the corporation, by reason of having likewise been acquired with its funds; and the exclusion of such evidence when offered by the receiver was reversible error.

### Evidence admissible.

The issue of the ownership of such securities was sufficiently presented by the pleadings, so that such evidence was admissible thereunder without amendment thereof.

### Use of trust property as homestead.

The fact that after the misappropriation of the trust company's funds the defendants occupied the premises purchased with such funds as their homestead, and have since so continued to occupy the said premises, in no manner affects or changes the principles above announced, however much it may affect the matter of procedure in the final adjustment of the equities of the parties.

Action in the district court for Hennepin county by the receiver of the Minnesota Title Insurance & Trust Company to adjudge that from and after March 2, 1906, defendants held title to certain real estate in trust for that company, until plaintiff became receiver thereof, and thereafter held title in trust for plaintiff; that plaintiff was the lawful owner thereof; to obtain restitution of the premises and for $10,000 damages, the value of the rents and profits thereof.

The answer set up that since March 16, 1906, defendants as husband and wife had lived with their family upon the real estate in question, and claimed and occupied the same as their homestead; that defendant Joseph, as president and general manager of the trust company, had particular charge of the loans which were made by the corporation, and handled and loaned its funds with the consent and knowledge of the board of directors as he saw fit; enumerated a certain check for $2,000, and certain contracts and mortgages, which defendant Joseph had assigned to the trust company, and also deeds of certain parcels of real estate of large value which both defendants had conveyed to the trust company, for the purpose of securing payment to that company of the amounts due from defendant Joseph to

the company; and alleged plaintiff had in his hands property so deeded of the value of $150,000, in excess of any debts due from said defendant Joseph to the trust company. The answer prayed for an account of moneys received by plaintiff from sales of the properties so deeded by defendants, and that plaintiff be required to cancel and satisfy the obligation of $10,000 on account of borrowing said sum on March 16, 1906.

The reply, among other matters, admitted the conveyances to the trust company, but denied that all of the parcels conveyed were owned by defendants or either of them, and alleged that all the properties belonging to defendants which were conveyed were insufficient at a fair valuation to pay defendant Joseph's indebtedness to the company.

The reply further alleged that, upon receiving deeds to those properties conveyed in March, 1907, plaintiff took possession of the real estate and collected rents therefrom, made repairs, paid taxes, all as authorized by the court, and sold the greater part of the property; that on many properties so conveyed by defendants, there existed second mortgages at the time of the conveyance, and in some cases third mortgages, representing loans made by the trust company under these circumstances: Defendant would cause the property to be purchased in the name of a third person of no responsibility, to whom the title was conveyed; said third person would make a second mortgage upon the property to the trust company, securing a note for an amount of money which the trust company would advance, not to such third person but to defendant Joseph, which money he would use for the purchase of that and other property; that the mortgages so made on the properties so conveyed aggregated more than $64,000; that the mortgages were negotiated and the money paid thereon without the knowledge or consent of the trust company, and without the authority of its board of directors, or of any other person connected with the trust company other than defendant Joseph; that when the properties were sold by plaintiff, in order to give good title it was necessary to satisfy these mortgages without payment; that, under orders of the court, mortgages to the amount of $64,000 had been so satisfied by plaintiff without payment; that such prop-

erties were purchased in such cases without the knowledge or authority of the board of directors; that in cases where second mortgages were given thereon to the trust company by third persons in whose name the properties were purchased, the properties were then conveyed to said defendant Joseph, subject to the mortgages so given thereon; that in all cases the money of depositors in the trust company was used to make such loans, and the loss to the trust company therefrom was $64,000, except in so far as sales of said property reduced the amount of the loss; that said sum of $10,000 was still unpaid and after giving credit for all sums to which he was entitled, defendant Joseph still owed a large sum of money.

The case was tried before Holt, J., who made findings substantially as set forth in the opinion, and as conclusions of law found that the $10,000 of the money of the Minnesota Title Insurance & Trust Company, paid by defendant Joseph on the purchase of the real estate, had been fully repaid to the corporation, and that plaintiff receiver had no title, estate, or interest therein. From an order denying plaintiff's motion for a new trial, he appealed. Reversed and new trial granted.

*James D. Shearer* and *John N. Berg,* for appellant.
*Lind, Ueland & Jerome,* for respondent.

PHILIP E. BROWN, J.

This is an action wherein the plaintiff, as receiver of the Minnesota Title Insurance & Trust Company, a corporation, seeks to impress a trust upon certain real property in the city of Minneapolis, the legal and record title whereof stands in the name of the defendant Joseph U. Barnes. The plaintiff, as such receiver, claims that this property was purchased largely with the funds of the corporation while it was a going concern, and that therefore he is entitled to judgment adjudging that as receiver he has a pro tanto interest in the property, and also in the rents and profits thereof since its purchase. The cause was tried to the court without a jury, and findings were made in favor of the defendants. This is an appeal from an order denying the plaintiff a new trial.

The facts are practically undisputed. It appears, substantially as

found by the trial court, that the Minnesota Title Insurance & Trust Company was duly organized as a corporation in the year 1885, under Laws 1883, p. 133, c. 107, as amended. It transacted a title insurance, banking, abstract, and trust business, from the year 1885 to March 26, 1907; its principal place of business being in Minneapolis. The defendant Joseph U. Barnes became the president and manager of the corporation in the year 1888, and so continued until March 26, 1907, on which date this plaintiff, at the instance of the state public examiner, was duly appointed receiver of the said corporation, with full power and authority, and he was directed by the court appointing him to take into possession and control all of the property and assets of the said corporation, and to convert and distribute the same pursuant to law. The defendant Mary L. Barnes has been the wife of the said Joseph since the year 1905.

On March 2, 1906, the said Joseph U. Barnes purchased from one Emma P. Benton lots 3 and 4, in block 1, of Dayton's subdivision of blocks 4 and 5 of J. T. Blaisdell's Revised addition to Minneapolis, being the property in controversy in this action, and took a contract for the purchase of the said property for the agreed price of $28,000, and it appears that it was worth at least that much, of which he paid, pursuant to such contract, on or about March 2, 1906, the sum of $2,000, and thereafter, and on or about March 16, 1906, he paid on the said purchase price $10,000, and received a deed to the said property, in which he was named as grantee. The same was duly recorded in the office of the register of deeds of Hennepin county on March 17, 1906. The remainder of the purchase price was secured by a purchase-money mortgage on the said property, executed by the defendants, for the sum of $16,000. Barnes obtained the $10,000 referred to by drawing drafts as president of the corporation against its funds in the Security Bank of Minnesota. This transaction was never submitted to or considered by the board of directors of the said Trust Company, and at the time this money was obtained by Barnes the board neither consented to nor had knowledge of it.

At the time of the obtaining of this $10,000, Barnes drew his check on the Trust Company for $2,000, and delivered it to the com-

pany. His account with the company was then overdrawn, and the amount of the check was added to the amount of the overdraft. The account continued to be so overdrawn until December 29, 1906, at which time all of Barnes' overdraft was paid. To secure the remaining $8,000, so taken, Barnes caused to be executed and placed with the corporation assignments of two contracts for the purchase of valuable properties in the said city, in which contracts he was named as vendee, and which required deferred payments before a deed to the said properties could be obtained, all of which was done without the knowledge of any other officer of the corporation. These contracts came into the hands of plaintiff, with other property of the receivership, at the time of his appointment.

Prior to and at the time the plaintiff became such receiver, Barnes owed the Trust Company a large amount of money, and shortly before the receivership he, his wife joining therein, conveyed to the company, at the instance of the public examiner, a large amount of real property which stood of record in his name, (which conveyance also included the equities under the contracts above mentioned, but did not include the property in controversy,) and was made to the corporation to secure all debts owing from the defendant Joseph U. Barnes, and to increase its assets. The receiver took possession of all the property so conveyed to the Trust Company, and has since sold most of the same and converted it into cash, most of which he has duly distributed among the creditors of the said company. The property included in the contracts assigned to the Trust Company at the time the $10,000 referred to was taken from it by the defendant Joseph was sold by the receiver for several thousand dollars more than the amount of the money so obtained, and all the property conveyed to the corporation by him, which has been sold, brought more than $30,000 in excess of his indebtedness to the corporation, without taking into account any of the expenses of the receivership.

Shortly after the purchase of the property in controversy, and before the receivership, the defendants took up their residence on the said property, and have ever since continued to reside thereon, and claim the same as their family homestead. The defendants

have paid the interest on the mortgage on the said property, and have received the rents and profits thereof since its purchase.

1. The plaintiff's first contention is that, since the defendant Joseph U. Barnes took and used the money of the corporation unlawfully and without knowledge or consent of the board of directors, an implied trust arose in favor of the corporation; and a considerable portion of the plaintiff's brief, and also of the defendant's, is devoted to the consideration of the distinction between resulting trusts and constructive trusts. It is not necessary, however, for us to enter into this discussion in this case, for it seems to us plain that we have here a clear case of constructive trust.

R. L. 1905, § 3045, provides, with regard to corporations of the kind here involved, as follows: "It shall not lend its funds, moneys, capital, trust funds, or any other property whatsoever, to any director, officer, agent, or employee, nor shall any such director, officer, agent, or employee become in any manner indebted to it by means of any overdraft, promissory note, account, indorsement, guaranty, or any other contract; and any such director, officer, agent or employee who shall become so indebted to it shall be guilty of larceny of the amount of such indebtedness from the time of its creation."

It being conceded that the defendant Joseph U. Barnes, while he was the president and manager of this Trust Company, and while acting as such, took a portion of its funds, viz., $10,000, and put the same into the property in controversy, it follows that a constructive trust then and there arose in favor of the Trust Company, and the latter then and there became vested with a pro tanto equitable estate in the property. If anything in addition to the provisions of the statute above recited were essential in order to raise the trust, it is necessary merely to advert to the fact that the said funds were taken without authority from or knowledge on the part of the board of directors of the Trust Company.

It is true that the trial court found that the money was taken "in the form of a loan," and that certain securities were "placed with the corporation" as security for the funds so taken; but it appears that the placing of these securities with the corporation consisted of merely depositing them in its vaults, that none of the other officers

were consulted in regard to any part of these transactions, and that the so-called loan was made entirely and exclusively by Barnes to himself, and we do not see how it can in any sense be called a loan from the corporation. It might, under some circumstances, be proper to consider the form and manner in which an officer of a corporation appropriates the funds thereof to his own use, as bearing upon the question of whether he intended to steal them; but, in view of the provision of the statute that a loan by such a company as is here involved shall be deemed larceny, the particular manner in which the funds in question came to be used by Barnes for his own personal benefit is immaterial. This provision likewise renders immaterial the trial court's finding that Barnes, immediately after making the so-called loan to himself, executed to the Trust Company his check upon his already overdrawn account for $2,000, to secure the repayment of a portion of the said $10,000, which said overdraft, including this $2,000 check, has since been paid; for under the statute this overdraft also was larceny. Immediately, therefore, upon the investment of the said $10,000 in the said property, a constructive trust arose in favor of the Trust Company, and such company thereupon became vested with a pro tanto equitable estate in such property. Henderson v. Murray, 108 Minn. 76, 121 N. W. 214, 133 Am. St. 412; Merritt v. Joyce, 117 Minn. 235, 135 N. W. 820; Nester v. Gross, 66 Minn. 371, 69 N. W. 39; 3 Dunnell, Minn. Dig. § 9916; 3 Pomeroy, Eq. Jur. § 1044; 1 Perry, Trusts, § 166; Sanford v. Hammer, 115 Ala. 406, 22 South. 117; Red Bud v. South, 96 Ark. 281, 131 S. W. 340; Nebraska v. Johnson, 51 Neb. 546, 71 N. W. 294.

In Primeau v. Granfield (C. C.) 184 Fed. 480, the court very clearly states the doctrine applicable to this case. Said Hand, District Judge, at page 482:

"No one disputes that when the trustee makes a separate investment of trust funds, though wrongfully, the beneficiary may follow the money into the res, or may elect to pursue the money as a lien or charge upon the res. The claim is that, when the trustee's money is mixed with that of the beneficiary, he loses the right to follow the res as property, and has the right only to hold it for a charge to

the extent of the claim.    On principle there can be no excuse for such a rule.    There is no reason why, by adding his own funds to the beneficiary's, the trustee should change the beneficiary's rights in the investment, provided there is no doubt what was the proportion of ownership in the funds actually invested.    As Lord Brougham says in Docker v. Somes, 2 Myl. & K. 664, that is just the case most likely to arise, when a guilty trustee has used the funds in his own business.    *Why the estate should suffer all the risk, and give the trustee the profit if he wins, is beyond comprehension.*    [The italics are ours.]    Upon authority, also, there is no question that the beneficiary is not limited merely to a charge.    *    *    *    I do not find a single case, and I have read a great many, in which the plaintiff's claim for a proportionate profit was disallowed when there were profits to get, and he claimed profits instead of his money with interest."

It is vain for the defendant to argue that equity never constructs a trust, except to work equity and justice; for, regardless of what may be the equities of the parties by reason of subsequent transactions, the settled rule of equity is that, upon such a transaction as the one here involved, it is deemed to be equity and justice that the holder of a legal title thus acquired be held, at once and immediately upon its acquisition, to hold it in trust for the owner of the funds with which it was purchased.    The trust, in such a case, is not created by the court, but is merely declared by the court to have arisen when a certain state of facts is shown.    The court may or may not enforce the trust, according to the equities of the parties when its aid is sought; but the trust itself is a creature of equity, born of and contemporaneously with the wrongful diversion of the beneficiary's funds.    The estate thus created is, moreover, as truly and distinctly an estate as is a fee simple, and passes and descends as an estate.    Milner v. Rucker, 112 Ala. 360, 20 South. 510; 1 Pomeroy, Eq. Jur. §§ 375, 3 id. 1058.    Hence the considerations of equity and justice which the defendant invokes cannot affect the question of the original creation of the trust in favor of the corporation, however much they may affect the course of the court in the

matter of enforcing the trust so created, which we will consider in its proper place.

2. Having determined that on or about March 15, 1906, when the defendant Barnes paid $10,000 of the Trust Company's funds upon the property here involved and received a deed thereto in his own name, a pro tanto trust arose in favor of the corporation, the next question to be considered is whether such trust still exists; for, if it does, the plaintiff's right to the relief sought is unquestionable. Bitzer v. Bobo, 39 Minn. 18, 38 N. W. 609; Treacy v. Power, 112 Minn. 226, 127 N. W. 936; Primeau v. Granfield, supra.

Undoubtedly the beneficiary of a constructive trust may elect to reclaim his money, with interest, and, for this purpose, also to pursue the property with a lien, instead of claiming a proportionate interest therein; and it is equally well settled that, if he so elects, he thereby waives the right to pursue the res as such. Kells v. McClure, 69 Minn. 60, 71 N. W. 827; Scott v. Edes, 3 Minn. 271 (377); Lemay v. Bibeau, 2 Minn. 251 (291); Hathaway v. Brown, 22 Minn. 214. These cases involved election by creditors to affirm a fraudulent conveyance by the debtor, and, while not directly in point, sufficiently illustrate the doctrine of election and waiver for our present purposes. See also Hunt v. Roosen, 87 Minn. 68, 91 N. W. 259.

But, to hold the beneficiary to an election, it must appear that he acted with knowledge, or at least in disregard of readily accessible means of knowledge, as distinguished from notice, or else has delayed so long that he is barred by laches. Hunt v. Roosen, supra; Treacy v. Power, supra; Gannaway v. Tarpley, 1 Cold. (Tenn.) 572. Indeed, we consider the true doctrine to be that where it appears, as in the instant case, that a constructive trust has attached, the evidence of an election to waive such trust must be clear, full, and convincing, and to the effect that the beneficiary has positively so elected, with full knowledge of the facts, or the equivalent thereof. See Hewitt v. Hayes, 205 Mass. 356, 91 N. E. 332, 137 Am. St. 448. In other words, the intention so to elect must clearly and fully appear, and will not, as a rule, be implied from mere circumstances calling for an inquiry. Constructive trusts are predicated

upon fraud, and frequently, if not almost invariably, have their inception in imposition upon persons easily defrauded, or in breach of fiduciary relations wherein the cestui que trust is largely at the mercy of the fiduciary. If, therefore, the rule were that mere notice, followed by apparently inconsistent conduct, works a divestiture of the trust estate, a premium would be placed upon dishonesty and breach of trust.

Moreover, it would seem that a clearer case of knowledge and the intention to waive the trust should be required, in order to preclude the beneficiary from asserting a trust of the kind here involved, than in the case of mere creditors seeking to vacate a fraudulent conveyance by the debtor. In the latter case the creditors have no estate in the res, and the question is merely whether an inchoate right has been waived; whereas, here the question is whether an estate has been divested, or else a question of estoppel, which latter involves more than knowledge or notice in that there must be also change of position and injury. In Hunt v. Roosen, supra, Mr. Justice Brown, in discussing a contention that a reorganization of a bank was absolutely illegal, and hence that the creditors could not be held to have waived the liability of the stockholders, for the reason that such liability was certainly and positively fixed by the statute, says (87 Minn. 78, 91 N. W. at page 262):

"And if such be the proper construction of the statute, and no actual notice of the terms of the judgment [of reorganization] be brought home to them, the creditors had the right, even though it be held that by their silence they acquiesced in and ratified the reorganization proceedings, to assume that they were being conducted in harmony and compliance with the terms of the statutes."

Furthermore, it must be remembered that in the instant case the election urged by the defendants is predicated as almost entirely upon the acts of the receiver. The rule against inferring an election from conduct, except where, with full knowledge, the intention to elect clearly appears, has peculiar application where the beneficiaries are sought to be concluded by the acts of the trustee, if, indeed, they can be held to his election at all, without the authority of the court obtained to support it, upon which latter question it is

not now necessary to pass. For the purposes of this discussion, however, we will assume that the Trust Company's right to pursue the property here involved as such could be waived by the conduct of the receiver, and that such company and its stockholders and creditors would be bound by the receiver's election without any authorizing order of court.

We have cited the above-quoted language of Mr. Justice Brown in Hunt v. Roosen, supra, merely for its general bearing upon the question here being discussed, and not for the purpose of intimating that the rights of the beneficiaries of the trust here involved could not be waived. Here was a certain fixed right, an estate; and even conceding that the plaintiff had some knowledge of the manner in which such estate arose for some time before he brought this action, and that when he converted the securities turned over to him and to the corporation by Barnes he had full knowledge of the facts, it does not follow upon this record that he has waived the right to claim the estate. So far as appears from the record, he seems to have acted in strict accord with his duties as receiver, and entirely under the orders of the court. Why he has sold more of the securities than necessary to satisfy the amount of the total indebtedness of Barnes to the company does not appear. And though it appears that he is still advertising the sale of the remainder of such securities so turned over to the corporation and to him, it does not appear why he is so doing. In view of the many contingencies which, under the circumstances, might call for such action without necessarily involving an election to abandon the pursuit of the property here involved, and likewise in view of a number of theories, which readily suggest themselves, upon which he may be acting, we do not see how it can be said, with any degree of certainty, that his acts amount to an election against the trust, either by actual intent implied from the circumstances or by operation of law.

Furthermore, it does not appear from the record, aside from the mere fact that the plaintiff received, along with the other assets of the Trust Company, these securities which he has converted and is still converting, that he was even put upon any inquiry as to the existence of the trust here sought to be enforced, until shortly before

he brought this action.   He seems to have discovered the fraud as soon as could have been expected under the circumstances, and to have acted promptly thereafter.

This action itself constituted an election to pursue the res, and unless, therefore, it can be said that he had already elected otherwise, or that he has since elected to abandon his former election, there is nothing to preclude him from continuing such pursuit.   The only claim of notice prior to this action, made by the defendants, is based upon the fact that the Barnes securities were among the assets which were received by the receiver as such, and that thereafter the defendant Joseph U. Barnes, on delivering to the plaintiff certain deeds covering the same properties, which deeds seem to have been delivered for the purpose of facilitating the receiver's administration of his trust, stated that the said deeds were intended merely as security for Barnes' indebtedness to the Trust Company, and as further security for the depositors of the company; any surplus after such application to be returned to him.

Now, giving this evidence its fullest weight, it merely charges the plaintiff with notice that Barnes made a claim to the excess of these securities over and above the indebtedness and claims mentioned; and since these deeds covered properties which had already come into the plaintiff's hands as assets of the corporation, it may be that he did not then, and still does not, consider Barnes' claim to such excess to be well founded.   In fact, he expressly refused to recognize any conditions in connection with the delivery of these deeds.   Furthermore, the plaintiff testified that, when the securities originally came into his possession, he had no knowledge that the company held them by virtue of any conveyance from Barnes or any one in his behalf.   He further testified that he had no knowledge of what property the said $10,000 went into until at or about the time a criminal prosecution against Barnes, concerning the same transaction, was instituted, which was just before this action was brought.   Certainly it cannot be held upon this evidence that there was an election against the trust prior to the time when this action was commenced; and, since this action was itself an election to en-

force the trust, the question for determination is whether by his subsequent conduct the plaintiff has withdrawn such election.

An interesting question is here presented, as to whether, after having elected, by action, to pursue the res, the plaintiff could withdraw such election and insist upon the repayment of the money, with interest. It is easy to conceive how Barnes might be the party insisting upon the irrevocability of the election, as, for instance, in case of a depreciation in the value of the trust property. But we do not deem it necessary to go into this question, for we are satisfied that no such withdrawal or revocation appears from the record.

The defendants' contention that there has been such a revocation is based on the fact that the answer filed in this action contained a full disclosure of the facts, and that the plaintiff thereafter went ahead and sold the securities given by Barnes to secure this $10,000, together with other securities, and that upon a general accounting the receivership estate is indebted to Barnes. That this contention is entirely fallacious seems to us apparent from what we have already said. In short, we do not think that a withdrawal of the election to pursue the res can be predicated upon the mere act of the receiver in continuing to reduce these securities to cash, or upon the state of the general account between Barnes and the corporation, even admitting that the answer charged him with full notice of the facts, nor upon both of these considerations taken together; for, as we have already suggested, the receiver's conduct is readily referable to several theories, none of which necessarily involves an election against the trust. Moreover, the receiver testified that he paid little attention to the answer, as it was agreed between him and counsel for the defendants that the action would not be tried until he was practically through with the receivership.

The burden of proving an election against the trust was upon the defendant. Kells v. McClure, 69 Minn. 60, 65, 71 N. W. 827. In that case it was held that the burden was upon the defendant to show that a conveyance in fraud of creditors had been ratified by the assignee for creditors. A decision as to whether the creditors would have been bound by such an election was expressly pretermitted, and it was held that the assignee's mere acceptance of notes

118 M.—13.

given by the defendant for the property, and their retention until action was brought, was insufficient to show an election against the conveyance.

We have here nothing to do with the state of the general account between Barnes and the corporation or receiver. What the defendants' final equities will be upon such an account does not appear from this record, and cannot now be determined. Nester v. Gross, 66 Minn. 371, 69 N. W. 39; Holmes v. Clifford, 95 Ill. App. 245; Milner v. Rucker, 112 Ala. 360, 20 South. 510; Crawford v. Moore (C. C.) 28 Fed. 824, affirmed 130 U. S. 122, 9 Sup. Ct. 447, 32 L. ed. 878. The rule is well stated in the Illinois case, supra, wherein it was contended that, if there had been any trust, it had been extinguished by certain conveyances.

"In a case of this kind," said the court, "a resulting trust does not depend upon the general state of accounts between the parties. If, as between appellant and said appellee, this farm or any interest therein is equitably hers, the fact that she may have received from her coappellee other property, which as between her and appellant would not be hers in equity, or that she might owe her coappellee large sums of money on general account, would not militate against the validity of her title in this particular property."

It may be urged that, as this case was argued here upon the theory that the trial court's findings of fact were correct, the conclusion which we have reached is not supported by the record. But there is nothing in such findings that in the least conflicts with our conclusion that the defendants have wholly failed to sustain the burden that was upon them to show an election against this trust, which, upon the evidence and the findings, arose at the time of the defendant Joseph's diversion of the corporation's funds. The findings, in substance, are merely that the property mortgaged or pledged to the Trust Company by placing with the corporation the contracts for the purchase thereof were thereafter conveyed to the receiver, together with other properties, "to secure all debts owing from the defendant Joseph U. Barnes, and to increase its assets;" that the said properties so conveyed were sold by the receiver and the proceeds applied "under the orders of this court made from time to time;" that the

equities mortgaged to secure the funds illegally appropriated by Barnes brought more than enough to repay the said funds; and that all the properties sold thus far brought more than $30,000 in excess of Barnes' total indebtedness to the corporation. The court does not even find that either the said contracts so placed with the corporation or the realty conveyed to it by Barnes belonged to him; the findings in this regard being that "in which contracts he was vendee," and that he "conveyed to the corporation a large amount of real property which stood of record in his name."

There is certainly nothing in these findings that militates against our conclusion. On the other hand, we do not think they support the trial court's conclusion of law that the said funds had been repaid to the receiver and that the plaintiff had no title or interest in the property sought to be recovered. In fact, the trial court's theory of this case, as reflected in its findings, seems to take no account whatever of the trust which arose when the corporation's funds were misappropriated and put into this property; for no finding concerning the existence of a trust was made. Against the objection and protest of the plaintiff the court seems to have tried the case upon the erroneous theory that it was merely an action for partial accounting.

Corporate officers holding positions of trust, as in this case, should be held to strict accountability for any and all breaches of their trust and disobedience of the law, and the law must be so administered that they will never be allowed to profit by disobeying it. Upon the whole evidence, and giving the trial court's findings full effect, we hold that no election against the trust was shown, and that, so far as disclosed by this record, the trust must be held still to exist.

3. The plaintiff contends that the trial court erred in allowing the defendant Joseph to show the deposit of securities in the Trust Company's vaults to secure the repayment of the funds illegally appropriated by him, and that, even if this contention be not sustained, the court should have allowed the plaintiff to show that the said securities were not, in equity, the property of the defendants, but of

the Trust Company, by reason of having been purchased with its funds.

In discussing the matter of the origin of the trust, we have already held that, upon that issue, the deposit of the securities could, in any event, be material only as bearing upon the criminal intent of the defendant Joseph, and that under the statute such evidence was not material even on that question, since the statute rendered the appropriation larceny, regardless of specific intent. The wrong could not be made right by any formalities of procedure. As said in Palmetto v. Risley, 25 S. C. 309, where the president of a corporation took a deed to himself in settlement of a debt due the corporation from one Parker: "We do not see that this wrong was in any way cured by the trustee charging himself on the books with the Parker debt and the costs of the improvements placed upon the lots" at the expense of the corporation.

As to the evidence of the subsequent dealings with these securities, the conveyance of the properties represented thereby to the receiver, and the sale thereof by him, it was admissible upon the issue of election of rights or remedies, and we have considered it fully upon such issue; but certainly the plaintiff should have been allowed to show that these properties, from the proceeds of which the defendant Joseph claims to have repaid his indebtedness to the corporation, really belonged to the corporation. If they did not belong to the defendants, but to the corporation, how could another obligation to the corporation be discharged therewith, and how can the defendant Joseph now claim that the receiver has elected to relinquish the trust here involved, by merely reducing the corporation's own property to money? The court committed reversible error in excluding this line of evidence for the purpose for which it was offered. It is apparent from the record that the defendant Joseph U. Barnes was engaged in sinuous transactions, using the corporation's funds in his private speculations, and the plaintiff should have been allowed to show that the properties which he conveyed to the corporation at the instance of the bank examiner, and which he here seeks to use for the purpose of evading this trust, in fact belonged to the

corporation. What Barnes' ultimate liability, if any, will be on these transactions, cannot now, however, be determined.

Some contention was made on the trial that this evidence was not admissible under the issues made by the pleadings, and the plaintiff offered to amend, which offer was at first approved by the court, but thereafter rejected. It is not necessary for us to go into the propriety of the court's action with regard to the offered amendment; for we think the issue made by the answer and reply at the time of such offer was sufficiently broad to admit this evidence. The answer sets up the deposit of the said securities in the company's vaults, and the subsequent conveyance of the properties to the receiver, and alleges the defendants' ownership thereof; and while the reply does not in terms claim the properties for the Trust Company, as having been purchased with its funds, and as sought to be set up by the proffered amendment, yet it does deny the defendants' ownership of these properties, and this, we think, was sufficient to admit the evidence offered and excluded. Johnson v. Oswald, 38 Minn. 550, 38 N. W. 630, 8 Am. St. 698.

4. Some stress has been laid upon the fact that the property here involved is the defendants' home. "The proposition of the appellant to deprive the respondent and his family of their home," says counsel for the defendants, "is so manifestly inequitable that it seems almost unnecessary to cite authorities to show that a court of equity should not lend its aid, or exercise its power by impressing a trust, to defeat the just rights of the respondent." But the question of the existence of a constructive trust is entirely unaffected by the use which a trustee ex maleficio makes of the property. Says Mr. Pomeroy, in his work on Equity Jurisprudence (section 1058): "Every act of the trustee in holding, managing, investing, or otherwise dealing with the trust property as though he could retain it, is itself a violation of his paramount obligation to the beneficiary." The very claim of a homestead in this property is a breach of the trust which arose out of the manner of its acquisition.

We do not mean to disparage any just claim which the defendants may have to this property, nor are we callous to the sacred sentiments that inhere in the word "home;" but we cannot forget that

there are other homes than that of the defendants. The vision of equity is not circumscribed by the narrow bounds of the interests immediately involved. As far as possible full justice must be done to all, and not far beyond the reach of equity's eye may be other homes endangered by the very operations by which the home here involved was acquired. But, however that may be, it is entirely possible that upon a final adjustment of accounts between the defendant Joseph U. Barnes and the corporation, and the final settlement of the receivership, the defendants' home may be left untouched, or at least preserved from sale, subject to a charge or lien; such charge, however, to be for the value of the corporation's interest therein, with rents and profits, as distinguished from the mere amount of the funds diverted with interest. And, both in the meantime and upon the final settlement, the trial court will have power to do full equity and justice between the parties, not forgetting the deserts of any, nor the fact that it is a home that is here sought to be subjected.

Order reversed, and new trial granted.

HOLT, J., having tried the case below, took no part.