## CHLEBEK v. MIKRUT.

1. EQUITY—PLEADING—MOTION TO DISMISS—TRANSFER OF CAUSES.
   Statements in a bill of complaint are taken as true for the purposes of deciding a motion to dismiss or transfer to the law side of the court (CL 1948, § 611.2).

2. SAME—PLEADING—CONVEYANCE OF INTEREST IN LAND—TITLE—CONSIDERATION.
   Bill of complaint in suit to compel conveyance to plaintiffs of an interest in real estate set forth an equitable cause of action, where it alleged plaintiffs paid $500 of the $600 down payment on the property and made substantial payments thereafter on the promise that the title to the property should vest in the 2 plaintiffs and the 2 defendants together.

3. SAME—CONSTRUCTIVE TRUST.
   Equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon property in favor of the one who is in good conscience entitled to it and who is considered in equity as the beneficial owner, where one party obtains the legal title either by fraud, or by violation of confidence or of fiduciary relations or in some other unconscientious manner.

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur, Pleading § 332.
[1, 5] Generally as to removal of causes from equity court to law court and vice versa, see 19 Am Jur, Equity § 196; 53 Am Jur, Trial § 7.
[2, 4] 49 Am Jur, Statute of Frauds § 459 et seq.
[3] 54 Am Jur, Trusts §§ 218–221.
[4] 54 Am Jur, Trusts § 191.
[5] Generally as to amendment of pleadings, see 41 Am Jur, Pleading § 288 et seq.
[6, 7] Generally as to soldiers' and sailors' civil relief acts, see 36 Am Jur, Military § 131; 130 ALR 774 and supplements thereto.
[8] 14 Am Jur, Costs § 97.
Generally as to review of order made upon motion to transfer cause from equity court to law court and vice versa, see 3 Am Jur, Appeal and Error §§ 598, 968.

4. TRUSTS—CONSTRUCTIVE TRUSTS—STATUTE OF FRAUDS.

Constructive trusts arise by operation of law, and are, therefore, not within the statute of frauds, although they may arise because of an oral agreement or undertaking.

5. EQUITY—PLEADING—AMENDMENT—DELAY.

Plaintiffs are accorded the right to amend their bill of complaint within 90 days, where order transferring cause from equity to law side of court is set aside and record shows trial court's denial of right to amend, made after there had been a substitution of counsel about a year after action had been commenced, was based on lateness of motion. therefor, a delay which defendant stepfather had also caused and it also appears one of the plaintiffs is presently in military service in Korea.

6. ABATEMENT AND REVIVAL—PLAINTIFF IN MILITARY SERVICE—CONSTRUCTION OF STATUTES—STAY.

A State statute abating suits against a person in the military service must be reasonably construed so as to protect the rights of all parties to the suit, especially where it does not provide that he is not entitled to a stay of suit where his ability to prosecute or defend the suit is not materially impaired by reason of his military service and Federal statute authorizes court to exercise discretion in matter of granting a stay (50 USCA, App, § 521; CL 1948, § 32.53).

7. APPEAL AND ERROR—REMAND—HEARING—PLAINTIFF IN MILITARY SERVICE—DEPOSITION.

Suit to compel conveyance of an interest in land to 2 plaintiffs, sons of defendant wife, is ordered remanded and heard at first opportunity one of the plaintiffs, presently in military service in Korea, is able to return on furlough, or if that is not within a reasonable time, his deposition is ordered taken and prosecution of the case continued by the remaining brother so as to protect their claimed rights and rights of all parties in property involved in suit for divorce between their mother and stepfather (50 USCA, App, § 521; CL 1948, § 32.53).

8. COSTS—NEITHER PARTY PREVAILING IN FULL.

.No costs are allowed on appeal from order transferring cause from equity to law side of the court, where neither of the parties has prevailed in full.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted February 10, 1953. (Calendar No. 45,-677.) Decided April 13, 1953.

Bill by Stanley Chlebek and Thaddeus Chlebek against Valentine Mikrut and Sophie Mikrut, husband and wife, to require conveyance of interest in real estate. Cross bill by defendant Valentine Mikrut against plaintiffs and other defendant to require vacation of property. Case transferred to law side of court on motion of defendant Valentine Mikrut. Plaintiffs review by appeal in nature of mandamus. Reversed and remanded for hearing after amendment of pleadings.

*Albert Green,* for plaintiffs.

*Thomes E. H. Black,* for defendant Valentine Mikrut.

BUTZEL, J. Stanley Chlebek and Thaddeus Chlebek, plaintiffs, in a bill of complaint against Valentine Mikrut and Sophie Mikrut, his wife, defendants, allege that they are sons of Sophie Mikrut and stepsons of Valentine Mikrut; that in the latter part of February, 1941, defendants expressed their desire to buy a house but stated that they could not do so unless the plaintiffs who were then residing with defendants would become co-owners with them; that thereafter a house was located at 5415 Mt. Elliot avenue, Detroit, Michigan; that it could be purchased from the receiver of a Detroit bank for the sum of $4,000 with a $600 down payment and the balance payable on land contract; that on or about March 21, 1941, plaintiffs paid from their own funds the sum of $500 of the $600 required as the down payment on the contract; that thereafter the said parties moved into the house; that it was necessary to expend a considerable amount for repairs and extensive alterations and additions, including a 2-car garage; and that in order to make the payments on the contract and to pay for the improvements, alterations

and additions plaintiffs turned over all of their earnings to defendants with the exception of $25 a week which they each retained and from which each of the said plaintiffs paid $10 a week for room and board. The contract and the subsequent deed were taken in the name of defendants. Plaintiffs, however, claim that defendants, and each of them, in consideration of the moneys paid by plaintiffs, on numerous occasions promised to have the contract and deed "changed" so as to include the names of the plaintiffs. They further allege "that as a result of the numerous demands made by the defendants upon the plaintiffs" (*sic*) and their repeated promises to have their names included in the title; the said defendants did on the 16th day of August, 1944, make a joint "Last Will and Testament" wherein one-quarter of the property was devised to each of the plaintiffs and the said defendants further on the same day contracted not to change their will. Plaintiffs further allege that as a result of the execution of the will and agreement not to change it, they felt that their interests in the premises were secure; that on or about May 2, 1949, when divorce proceedings were instituted by one defendant against the other in the circuit court for the county of Wayne, State of Michigan, plaintiffs became fearful that their interest in and to the property might be destroyed and denied by the defendants who might sell and dispose of their interest in the property unless enjoined by the court. Evidently, because of repairs, extensive alterations and additions and increment in values in general, the property has become far more valuable than when originally purchased from the receiver. It now consists of a 4-family apartment house and a garage. Defendant Valentine Mikrut alleges it is worth $15,000.

Defendant Sophie Mikrut filed an answer in which she admits all of the allegations in plaintiffs' bill.

Defendant Valentine Mikrut, however, filed an answer and cross bill in which he denies all of plaintiffs' material allegations except in regard to the will, which he says he executed only because of his wife's nagging and insistence. In his cross bill he denies that plaintiffs contributed anything toward either the initial or subsequent payments in purchasing the property, or the costs of the repairs, alterations and additions. He further denies that he promised to make plaintiffs co-owners of the property. According to his cross bill it appears that he and Sophie Mikrut entered into a common-law marriage in 1935, living together until April 29, 1943, and that they were legally married on or about the 10th of February, 1937. He charges that the instant suit is brought principally in collusion with Sophie Mikrut, plaintiffs' mother, and in furtherance of her divorce suit so as to deprive him of his real interest in the property. He intimates that the instant suit is an outgrowth of or collateral to the divorce suit although the 2 are entirely separate and neither depends upon the other, except that in the divorce proceeding no final adjudication can be made as to the property until the instant case is disposed of. He asks that plaintiffs' bill of complaint be dismissed.

Although the bill of complaint was filed on January 23, 1951, and defendant Valentine Mikrut's answer and cross bill were filed on February 19, 1951, it was not until February 4, 1952, that he moved to "dismiss and transfer" (*sic*) the case to the law side of the court.* He claims that the alleged agreement, as stated by plaintiffs, is so indefinite and vague as to be incapable of being carried out; that the alleged agreement is defective because it lacks mutuality of obligation, since plaintiffs do not allege any contract on their part to pay any stipulated

---

* See CL 1948, § 611.2 (Stat Ann § 27.652).—REPORTER.

amount; that the court cannot decree performance of the alleged agreement because plaintiffs do not show in what proportions the title was to be held; and that the alleged agreement is unenforceable in equity because it lacks mutuality of remedy, inasmuch as both of the plaintiffs were minors at the time and Sophie Mikrut, their mother, was under certain disabilities as a married woman. He contends that in 1935, Stanley and Thaddeus were 13 and 15 years of age respectively, which would make Stanley 19 and Thaddeus 21, or thereabouts, in 1941, but specific dates are not shown. A fair reading of the bill of complaint, however, indicates that plaintiffs had already made their payments towards the purchase price, repairs, improvements and additions prior to the filing of the bill of complaint. At the hearing on the motion, the judge ruled that the bill lacked sufficient allegations to show an enforceable contract and ordered the case transferred to the law side of the court. It appears that a very short time prior to the hearing on the motion plaintiffs had secured new counsel to represent them. Plaintiffs' present attorney moved orally to amend plaintiffs' bill at the hearing but the judge refused to allow any substantial amendments, holding that such a motion came too late. He did, however, permit both sides to amend their pleadings as to minor matters. With the insufficient facts before us we cannot determine now whether plaintiffs would be confronted with the defense of the statute of limitations on the law side of the court. They were over 21 years of age when the bill was filed.

It further appears that Thaddeus Chlebek is a member of the armed forces of the United States and, although he was home for a few days while the proceedings on the motion "to dismiss and transfer" were had, he is now in Korea. He claims that because of the provisions of the Michigan soldiers'

and sailors' relief act (CL 1948, § 32.53 [Stat Ann 1952 Rev § 4.644]), he is entitled to an adjournment of all proceedings in this case, including decision on the motion to dismiss or transfer. The judge ruled that since he was present and available he was not entitled to an adjournment of the hearing on the motion. We granted plaintiffs leave to appeal from the order transferring the case to the law side of the court.

Notwithstanding the fact that the bill of complaint is very poorly drawn, it contains sufficient allegations so as to set forth an equitable cause for action. Taking the statements in plaintiffs' bill as true, for the purposes of deciding a motion to dismiss or transfer to the law side of the court, there are allegations which show that plaintiffs put up $500 of the $600 down payment on the property and made substantial payments thereafter on the promise that the title to the property should vest in the 2 plaintiffs and the 2 defendants together. Plaintiffs are no longer minors.

The case comes within the rules set forth in *Linsley v. Sinclair,* 24 Mich 380; *Ridky* v. *Ridky,* 226 Mich 459; *Stephenson* v. *Golden,* 279 Mich 710; *Ridky* v. *Ridky, supra,* was a case in which a husband sought to establish a half interest in the family home. He claimed that his wife had taken title to their house in her own name, when it had been mutually understood that it was to have been taken in their joint names as tenants by the entireties. In holding that the situation gave rise to a constructive trust, we said:

" 'All instances of constructive trust may be referred to what equity denominates "fraud," either actual or constructive, including acts or omissions in violation of fiduciary obligations. If one party obtains the legal title to property, not only by fraud, or by violation of confidence or of fiduciary relations,

but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner. 1 Pomeroy, Equity Jurisprudence, § 155.'  *Nester* v. *Gross,* 66 Minn 371 (69 NW 39)."

Such trusts arise by operation of law, and are, therefore, not within the statute of frauds, although they may arise because of an oral agreement or undertaking. For a collection of cases dealing with the rights of parties to an oral agreement to purchase land for another or together, see the annotations in 42 ALR 10, 62; 135 ALR 232; 27 ALR2d 1285, 1300.

As already indicated, the judge was of the opinion that plaintiffs' motion to amend their bill came too late. However, the objections to the sufficiency of the bill of complaint were not filed until over a year after the bill of complaint was filed and almost a year after the answer and cross bill was filed. Consequently the delay was also caused by Valentine Mikrut, who now seeks to take advantage of it. We believe that the plaintiffs should have an opportunity to amend their bill of complaint as quickly as possible, taking into consideration that plaintiff Thaddeus Chlebek is now in Korea.

We hold that the order of the trial court transferring the case to the law side of the court should be set aside, and that the case remain on the equity side. We further hold that plaintiffs should have 90 days in which to amend their bill of complaint.

It appears that plaintiff Thaddeus Chlebek expects to make the army his career, and that it may be many years before he leaves it. The Michigan soldiers' and sailors' relief act (CL 1948, § 32.53 [Stat Ann 1952 Rev § 4.644]), provides in part:

"And all suits in the courts of this State, pending against any such person at the time of entering such actual service, or commenced at any time during such service, shall stand adjourned until after the termination of such service."

Section 201 of the Federal Soldiers' and Sailors' Relief Act of 1940, 50 USCA, App, § 521, provides as follows:

"At any stage thereof of any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within 60 days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person in his behalf, be stayed as provided in this act, unless, in the opinion of the court, the ability of the plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

Defendant Valentine Mikrut should not be obliged to wait until Thaddeus gives up his career as a member of the armed forces, which may be many years from now, in order to determine his rights in the premises. Although the Michigan act, *supra,* unlike the Federal act, *supra,* does not provide in so many words that a serviceman is not entitled to the stay of a suit where his ability to prosecute or defend the suit is not materially impaired by reason of his military service, still the Michigan act must be reasonably construed so as to protect the rights of all of the parties. We find nothing in the case that prevents Thaddeus from prosecuting this suit through his brother, co-plaintiff, or his attorney, except that he should have a right to testify at the hearing. The case should be heard at the first opportunity when Thaddeus can come home on furlough and, if not within a reasonable time, his deposition should be

taken. His brother Stanley is here to prosecute the case. In any event, Valentine Mikrut's rights in the property must also be recognized. The trial court shall ascertain when Thaddeus will again be able to come home on furlough, and, if it will not be within a reasonable time, to be determined by the court, then his deposition may be taken, at a time and manner to be determined by the court.

The case is remanded to the trial court for proceedings in conformance with this opinion. As neither of the parties has prevailed in full, no costs are allowed.

DETHMERS, C. J., and ADAMS, CARR, BUSHNELL, SHARPE, BOYLES, AND REID, JJ., concurred.