## EMIL ASLESON AND OTHERS v. LAWRENCE R. ALLISON AND OTHERS.[1]

March 31, 1933.

No. 28,975.

[1]Reported in 247 N. W. 579.

*Carl A. Youngquist* and *Lawrence R. Allison,* for appellant.

*P. A. Wells,* for respondents.

WILSON, CHIEF JUSTICE.

Defendant Allison appealed from an order denying his motion for a new trial.

Charles Rank and Harry O. Dahl were partners for the development and operation of a fur farm. Each of the plaintiffs held a separate contract, all of the same substance, one of which is as follows:

"AGREEMENT

"This agreement entered into by and between O. A. Roedell, Minneapolis, Minnesota, and Minnesota Northern Fur Farms Company of Minneapolis, Minnesota, do hereby agree that in consideration of the sum of Five Hundred Dollars ($500.00), receipt of which is hereby acknowledged, O. A. Roedell is herewith entitled to not less than One Tenth (1/10) of One Third (1/3) of the total of all profits from the sale of PAIRS of muskrats by the Minnesota Northern Fur Farms Sales Company and also the same proportion of profit from the receipts of the Minnesota Northern Fur Farms Holding Company, said Holding Company to operate ranching farms to be owned and controlled by the same members of the Sales Company and said O. A. Roedell to have same interest in profits in either Company in same proportion as herein above first mentioned.

"Said Holding Company to have and to hold all land and equipment of ranching farm or farms and also Fifty Per Cent (50%) of litters of all rats so placed therein by the Sales Company.

"This Agreement can only be terminated by said O. A. Roedell, his heirs or assigns, and in case of his or their desire to sell his above interest, said O. A. Roedell hereby agrees to give the Minnesota Northern Fur Farms Company the first option on his interest.

"This agreement executed in duplicate this Tenth Day of March, 1927.

> "(Signed)  O. A. Roedell
> "(Signed)  H. O. Dahl
> "Secretary and Treas.
> "Minnesota Northern Fur Farms
> Company, Minneapolis, Minn.

"WITNESSES:

"(Signed)  Chas. E. Brooks
"(Signed)  Frances H. Dahl"

From May to November, 1927, the partnership sold "pairs" of muskrats, realizing about $2,750, and these contracts provided for the rats to be kept on the fur farm and ranched by Rank and Dahl under arrangements as therein provided and which contemplated a profit to the owners of the rats and to the owners of the fur farm.

In April, 1927, a lease was obtained from C. J. Olson for 80 acres of land, and the consideration therefor was a contract similar to the one above set forth. In November, 1927, Rank and Dahl purchased 40 acres adjoining the Olson 80.

In January, 1928, Rank and Dahl dissolved the partnership, Rank assigning his interest therein to Dahl.

On May 1, 1928, Dahl assigned and transferred all the property which he then owned in this enterprise to appellant, an attorney, the consideration paid by Allison being about $1,400. Dahl was apparently not making a success of the business. He seems to have caused the $1,400 to be used mostly for the payment of certain debts. He also procured an agreement from Allison as a part of the transaction to acquire 160 acres of land to complete the farm, to complete the necessary fence for the operation of the farm, and to ranch the muskrats which had been so sold under contracts, which was apparently to carry out Dahl's duties under such contracts, and to give Dahl one-half the net profits realized from the performance of these particular kinds of contracts. It seems, however, that no provision was made for plaintiffs or others similarly situated.

Allison did more than to acquire the 160 acres. He acquired 200 acres. He completed the fence inclosing a lake and marshy land of about 240 acres of the 320 acres. He also completed a caretaker's cottage on the premises and claims to have expended about $5,000 in improvements upon the property. The exact amount is not shown. A portion of the money, perhaps $3,900 so expended, was raised by pledging the property to one Kirk.

Allison has refused to recognize any responsibility in relation to the contracts held by plaintiffs and others similarly situated, and claims he knew nothing as to the existence of these contracts until after he made his deal with Dahl. Both Rank and Dahl are now dead.

The trial court held that plaintiffs have an interest in this property proportionate to the amount invested by them, and that others similarly situated have similar rights. It also determined that Allison should be held to be a trustee for the benefit of those having such interest in the property, and that the appointment of a receiver pending trial be made permanent. There is no finding by the trial court as to Allison's knowledge of the contents of the contracts held by plaintiffs and others similarly situated. Allison's denial of such knowledge of such contracts, however, stands uncontradicted.

As announced by plaintiffs' counsel in oral argument, the plaintiffs prosecuted this action as creditors, not as partners in the ownership of such assets.

Our statute defines certain cases wherein a receiver may be appointed. G. S. 1923, § 8013, as amended, 2 Mason, 1927, id. and G. S. 1923 (2 Mason, 1927) § 9389. These provisions do not reach the situation now before us. They are not, however, exclusive, and the court may under its general equity powers appoint receivers in other cases in accordance with the existing practice. O'Brien Merc. Co. v. Bay Lake F. G. Assn. 173 Minn. 493, 217 N. W. 940.

The appointment of a receiver is made by a court of equity, and its purpose is to accomplish, as far as practicable, complete justice for the parties before it. Its object is to secure and hold all property so that it may be available for the application of the final

judgment. A receiver is not to be appointed when the moving party has an adequate remedy at law.

The appointment of a receiver is a very drastic proceeding, "usually very expensive and frequently absorbing the greater part of the estate." 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8248. It is "harsh, severe, drastic, heroic, and costly." 53 C. J. p. 20, § 3.

We must here look to the sufficiency of the facts to move a court of equity to make an appointment of a receiver. N. W. Nat. Bank v. Mickelson-Shapiro Co. 134 Minn. 422, 159 N. W. 948. Concededly Allison has acquired the real estate involved. He may have acquired such muskrats as Dahl then owned, if any. He makes no claim to the muskrats that had been sold in "pairs." He agreed, however, to carry out Dahl's contract with such purchasers. Whether he did do that is not before us. Perhaps he could not do it after the property went into the hands of a receiver. Such contracts, however, are not the kind held by plaintiffs. We are unable to find any facts imposing a legal duty upon Allison to come to the rescue of plaintiffs or persons similarly situated.

The contracts under which plaintiffs claim to be creditors of Rank and Dahl do not give plaintiffs any lien upon the property which Allison acquired. It is the law that when a creditor applying for the appointment of a receiver has no right to, interest in, or lien upon the property. in question, the appointment will be refused. 53 C. J. p. 27, § 12, and cases cited, including Red River P. G. Assn. v. Bernardy, 126 Minn. 440, 148 N. W. 449. In this case plaintiffs do not have a right, superior to Allison, to resort to this property for the satisfaction of their claims. It may be that as against Rank and Dahl they had a claim of such an equitable nature against the property involved, while owned by Rank and Dahl, as to entitle them to the appointment of a receiver; but Allison has in no sense stepped into their shoes for the performance of their contracts with plaintiffs.

Assuming that Allison has legally wronged plaintiffs, which is not disclosed by the record, it must be observed that the complaint contains no allegation that he is insolvent or that they do not have an adequate remedy at law.

We have examined the record, and it appears that Allison bought this property and paid value therefor, apparently a fair value, though there is no finding of fact in relation thereto; that he had no notice, actual or constructive, of any rights of plaintiffs or others similarly situated in or to any part of such property; and that he acted honestly for a legitimate purpose and in the belief that Dahl had the right so to sell the property to him. Upon the record before us the facts did not authorize the appointment of a receiver, and the property is beyond the reach of plaintiffs and others similarly situated. There is no evidence to sustain the finding that Allison is a trustee for the benefit of plaintiffs and others similarly situated.

Reversed.

OLSEN, JUSTICE, took no part.

