MINNESOTA HOTEL COMPANY, INC., (formerly known as Robert E. Woolley, Inc.), a Texas Corporation, et al., Appellants,

v.

ROSA DEVELOPMENT CO., et al., Respondents.

No. C7–92–1569.

Court of Appeals of Minnesota.

Feb. 23, 1993.

Frank A. Taylor, Mark B. Peterson, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, and William A. Brewer, William F. Dolan, Bickel & Brewer, Chicago, IL, for appellants.

David R. Marshall, Mary E. Hanton, Fredrikson & Byron, P.A., Minneapolis, and Patrick J. Jordan, Beth A. Brandon, Baker & Hostetler, Cleveland, OH, for respondents.

Considered and decided by DAVIES, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellants Minnesota Hotel Company (f/k/a Robert E. Woolley, Inc. or REW, Inc.), Robert E. Woolley, and Minneapolis Airport Hotel Associates (MAHA), sued respondents ROSA Development Company (ROSA), Carl D. Glickman, and Robert C. Muir for fraudulent misrepresentation, breach of fiduciary duty, breach of contract, negligent misrepresentation, and misuse of confidential information.

The trial court granted respondents' motion for appointment of a receiver pursuant to the parties' agreement. The trial court appointed appellants' choice of receivers and required respondent ROSA to post a bond. Appellants challenge the appointment of a receiver without a finding that the property or its rents and profits were in danger of loss or material impairment. Respondents challenge the terms of the appointment: the choice of receiver, the bond requirement to be paid by respondent, and the failure of the trial court to follow all the terms of the agreement in appointing the receiver. We affirm.

## FACTS

In 1984, appellants Robert E. Woolley, Inc. and Robert E. Woolley and respondent ROSA formed Minneapolis Airport Hotel Associates (MAHA), a partnership, to develop a hotel near the Minneapolis airport. Respondent Glickman is an employee of Kay Holding Company, which is a general partner in ROSA. Respondent Muir is a managing partner in ROSA. ROSA contributed land near the airport to MAHA. ROSA allowed MAHA to use its adjacent land for the hotel's parking, at no cost.

Disputes arose among the parties. In 1986, appellants agreed to purchase ROSA's interest in MAHA for $5,000,000 pursuant to a purchase agreement. In the purchase agreement, appellants signed a promissory note for the purchase price plus interest. To secure the promissory note, appellants Woolley and Robert E. Woolley, Inc. (REW Inc.) agreed to assign their rights in MAHA (and other partnerships) to ROSA.

From the time of the agreement until August 1988, appellants used ROSA's land for parking without charge from ROSA and without objection. In August 1988, ROSA indicated its intention to develop that land as a parking lot for people commuting to the airport. That development would prevent appellants from continuing to use the property. Appellants claimed they had oral agreement with ROSA to let them use ROSA's land for parking without charge. ROSA denied any such agreement

existed, and there was no indication of such an agreement in the written agreement when ROSA sold appellant its interest in the partnership.

In December 1989, appellants purchased a plot of land from ROSA for $1,197,000 to provide for its parking needs. Appellants signed a second promissory note for this purchase, made payments until December 1991 when they defaulted on both notes. ROSA informed appellants it intended to sue for recovery under the $5,000,000 promissory note. ROSA claims appellants requested postponing the lawsuit and stated they were interested in settlement, then days later commenced this lawsuit for misrepresentation.

ROSA moved for appointment of a receiver pursuant to the assignment agreement. The agreement provided:

*In the event of default * * *, the Secured Party [ROSA],* upon ten (10) days written notice to Woolley and REW, Inc., or as otherwise provided in the Note, *shall have the right to cause the Secured Party, or any designee of the Secured Party, to be appointed as a receiver* for the purpose of exercising all voting and control rights of Woolley and REW, Inc. as partners in the [MAHA and other partnerships] and to receive on behalf of the Secured Party all profits, losses, credits, cash flow and other distributions from the [MAHA and other partnerships] to which Woolley and REW, Inc. would otherwise have been entitled but for the default(s). Each of Woolley and REW, Inc., does hereby grant his or its irrevocable power of attorney, coupled with an interest, to the Secured Party to effect the foregoing, and to exercise all other rights and remedies under law and at equity to which the Secured Party is entitled, including without limitation, all rights to which the Secured Party is entitled as an assignee of the Secured Interests and as a secured party under the Uniform Commercial Code of the states of Delaware, California and Minnesota, as the case may be. All rights hereunder shall be cumulative

with other rights of the Secured Party under the Note, at law or in equity.

The trial court granted the motion for a receiver, but appointed appellants' proposed receiver, CreditVest, Inc. The trial court also required ROSA to post a $4,000,000 bond.

The trial court made the receiver appointment[1] pursuant to Minn.Stat. § 576.01 (1990) on the grounds that:

a. ROSA is the holder of a Promissory Note payable to ROSA in the principal amount of $5,000,000 (the "Note"), which is secured by Woolley's and MHC's interests in the partnerships for which an Assignment of Partnership Interest and Security Agreement ("Assignment Agreement") was executed;

b. The Assignment agreement provides that, in the event of a voluntary or involuntary default on the Note, ROSA may establish a receivership to protect the value of Woolley's and MHC's interests in the partnerships.

c. MHC is in alleged default under the terms of the Note as MHC failed to make the $350,000 interest payment to ROSA on December 1, 1991, as required by the Note.

The trial court ordered that the receiver would have access to all records "which are essential for its service as a receiver," but ordered the receiver not to terminate the management of the hotel, and did not give the receiver voting and control rights in the partnerships.

Appellants claim the trial court erred by appointing a receiver without finding that the property or its rents and profits were in danger of loss or material impairment. Respondents claim the trial court erred by not following the terms of the agreement. Respondents claim they, in the alternative, should have the power to choose which receiver. Respondents also argue that the receiver, whoever it is, should have to post the bond, not ROSA. Respondents further argue the trial court erred by failing to provide the receiver with the power to exercise voting and control rights, to have access to all books and records, and to terminate management.

Respondents requested CreditVest be removed because CreditVest refused to provide information for the bonding company and refused to sign an indemnification agreement. The trial court ordered withdrawal of CreditVest as receiver. In order to expedite the litigation, appellants and respondents agreed to the appointment of Deloitte & Touche as the receiver. Respondents continue to claim they are entitled to their choice of receiver under the agreement.

## ISSUES

1. Did the trial court err by appointing a receiver of a property pursuant to the parties' contractual agreement under Minn. Stat. § 576.01, subd. 1(4) (1990) without a specific finding that the property or its rents and profits were in danger of loss or material impairment?

2. Did the trial court err by requiring the party requesting the receiver to post a bond instead of the receiver?

3. Did the trial court err by not following the terms of the parties' contractual agreement in appointing the receiver?

## ANALYSIS

### I.

*Receiver Appointment*

■ Appointment of a receiver is within the discretion of the trial court. *Mutual Benefit Life Ins. Co. v. Frantz Klodt & Son, Inc.*, 306 Minn. 244, 246, 237 N.W.2d 350, 352 (1975) (companion case to *State Mut. Life Assurance Co. v. Frantz Klodt & Son, Inc.*, 306 Minn. 249, 237 N.W.2d 354 (1975)); *Brown v. Muetzel*, 358 N.W.2d 725, 728 (Minn.App.1984). Minn.Stat. § 576.01, subd. 1 (1990) provides:

A receiver may be appointed in the following cases:

1. Robert E. Woolley, Inc. (REW, Inc.) is now known as Minnesota Hotel Company, Inc. (MHC).

(1) Before judgment, on the application of any party to the action who shall show an apparent right to property which is the subject of such action and is in the possession of an adverse party, and the property, and its rents and profits, are in danger of loss or material impairment, except in cases wherein judgment upon failure to answer may be had without application to the district court;

(2) By the judgment, or after judgment, to carry the same into effect, or to preserve the property pending an appeal, or when an execution has been returned unsatisfied and the judgment debtor refuses to apply property in satisfaction of the judgment.

(3) In the cases provided by law, when a corporation is dissolved, or is insolvent or in imminent danger of insolvency, or has forfeited its corporate rights; and, in like cases, of the property within this state of foreign corporations;

(4) In such other cases as are now provided by law, or are in accordance with the existing practice, except as otherwise prescribed in this section.

The statute does not directly address the situation where a party has consented to appointment of a receiver in a contract. Respondents moved for the receiver pursuant to Minn.Stat. § 576.01, subd. 1(4), arguing that a contractual agreement is "such other case."

■ Appellants claim respondents must show the property, its rents, and profits are in danger of loss or material impairment under the statute before a receiver may be appointed.

In order to show an imminent danger of loss and an inadequate remedy at law, the moving party must show by clear and convincing evidence that (1) the person in possession is insolvent, (2) the person in possession is committing waste, and (3) the value of the security is inadequate to protect the debt. Without this showing a court should not exercise its discretionary authority to grant a request for the appointment of a receiver.

*Brown*, 358 N.W.2d at 728 (citations omitted). The trial court did not address these requirements, but appointed the receiver pursuant to the assignment agreement. Appellants claim the requirements must be addressed *regardless* of whether there is an agreement. We disagree. The statutory requirements need not be met when the parties contractually agree otherwise.

■ The Minnesota Supreme Court has addressed other situations involving receivers which were not covered by the statute. *See Asleson v. Allison,* 188 Minn. 496, 247 N.W. 579 (1933). In that case, the court found the statutory provisions for appointment of receivers are not exclusive. *Id.* at 499, 247 N.W. at 580. A trial court, under its general equity powers, may appoint receivers "in other cases in accordance with existing practice." *Id.; see also Beirne v. Habel,* 20 A.D.2d 891, 248 N.Y.S.2d 939 (N.Y.A.D.1964) (appointment of receiver approved in part because parties agreed to appointment in open court); *Federal Home Loan Mortgage Corp. v. Nazar,* 100 B.R. 555 (D.Kan.1989) (agreement to appoint a receiver may be enforced). *Contra Huggins v. Green Top Dairy Farms,* 75 Idaho 436, 448, 273 P.2d 399, 406 (1954) (contractual agreement to appoint a receiver could not be enforced unless the statutory prerequisites were met); *Edenfield v. Crisp,* 186 So.2d 545 (Fla.App.1966) (receiver should not be appointed simply because the parties consented).

■ In addition, respondents have a strong argument on the merits that no oral agreement regarding the parking lot existed. Appellants claim they had an oral agreement with ROSA to let them use ROSA's land for parking without charge, as they did until 1988. ROSA denied any such agreement existed. The written purchase agreement involving a $5,000,000 deal did not discuss the use of ROSA's land for parking. Appellants eventually purchased a parking lot from ROSA for $1,197,000 in December 1989. This purchase agreement did not reserve an issue of the oral agreement for a future lawsuit. Furthermore, appellants' acceptance of the property deeds, without specifically reserving the parking issue, constituted merger of the parties' agreements and now the

deeds are presumed to be the final agreement between the parties. Since the alleged oral agreement was not mentioned in any of the written documentation of the property transactions, it is not enforceable. *See St. Louis Park Inv. Co. v. R.L. Johnson Inv. Co., Inc.*, 411 N.W.2d 288, 291 (Minn.App.1987), *pet. for rev. denied* (Minn. Oct. 30, 1987).

## II.

### Bond Requirement

 Respondents claim the trial court erred by requiring ROSA, instead of the receiver, to post a bond. Minn.Stat. § 576.-01, subd. 2 (1990) states the court shall determine the amount of the bond to be posted by the receiver. However, the statute does not require the bond to be posted "only" by the receiver. There is a distinction between a bond posted by a receiver, which preserves the property the receiver handles and assures distribution according to the court's order, and a bond filed by the person seeking the receivership, which is required to indemnify parties against a wrongful appointment of a receiver. *Griggs, Cooper & Co. v. Lauer's, Inc.*, 264 Minn. 338, 344, 119 N.W.2d 850, 854 (1962). A receiver should not be required to post a bond in order to indemnify a party for a wrongful appointment. *Id.* The trial court did not abuse its discretion by requiring ROSA to post the bond.

## III.

### Limitation of Powers

 Respondents also argue the trial court erred by not giving the receiver voting and control rights in the other partnerships, access to all books and records, or the power to terminate management of the hotel, and also by not allowing ROSA to choose the receiver. Appointment of a receiver is an equitable remedy. *Asleson*, 188 Minn. at 500, 247 N.W. at 580. The trial court has the discretion in receivership proceedings to do what is best for all concerned. *See Sibley County Bank v. Crescent Milling Co.*, 161 Minn. 360, 201 N.W. 618 (1925). In this case, the trial court was within its discretion to limit the receiver's powers.

The trial court balanced the rights of the parties by appointing a receiver that respondents wanted, but placing limits on its powers, by specifically stating that the receiver did not have the power to terminate management without court approval and by not giving the receiver voting and control rights in the other partnerships. The trial court used its discretion to control the situation. Finally, the trial court gave the receiver access to all essential records. Respondents request unlimited access to all records. The difference between "essential" records and "all" records is not an abuse of discretion.

 Finally, respondents also argue that the trial court erred by not allowing ROSA to choose the receiver. The assignment agreement provided that ROSA had the right to cause itself, or any designee, to be appointed as a receiver. However, a party generally does not have "a right to have any particular person appointed or retained as receiver." *Twin Cities Nat'l Bank v. The Anderson Co.*, 156 Minn. 502, 504, 195 N.W. 273, 274 (1923); *see also O'Brien Mercantile Co. v. Bay Lake Fruit Growers Ass'n*, 173 Minn. 493, 495, 217 N.W. 940, 941 (1928) (court selects receiver). Furthermore, after the removal of one receiver respondents did agree, albeit under protest, to the receiver appointed. The trial court did not abuse its discretion by choosing a neutral receiver. Respondents won the major dispute between the parties, whether a receiver should have been appointed at all. It was not error for the trial court to temper the circumstances surrounding the appointment of the receiver and its powers.

## DECISION

The trial court did not err by appointing a receiver pursuant to the parties' contractual agreement under Minn.Stat. § 576.01, subd. 1(4) (1990) without specifically finding that the property or its rents and profits were in danger of loss or material impairment.

The trial court did not err by requiring respondent ROSA to post a bond for the appointment of the receiver instead of requiring the receiver to post the bond.

The trial court did not abuse its discretion by choosing the receiver and limiting its powers.

Affirmed.